THE STATE v. W. B. SAPPINGTON, Appellant.—2 S. W. (2d) 729.

Division Two, February 18, 1928.

(1)

*D. W. Peters* for appellant.

*North T. Gentry,* Attorney-General, and *Claud Curtis,* Special Assistant Attorney-General, for respondent.

4

HENWOOD, C.—By an information filed in the Circuit Court of Cooper County, appellant was charged with the unlawful sale of one pint of hootch, moonshine and corn whiskey to one Oscar Williams. The venue was changed to the Circuit Court of Pettis County, where he was tried and convicted and his punishment assessed at a fine of $500 and imprisonment in the county jail for three months. He was sentenced in accordance with the verdict and appealed.

The evidence produced by the State shows that on March 13, 1925, appellant was conducting the Commercial Hotel or Sappington Hotel in the city of Boonville, in Cooper County. About two o'clock in the afternoon of that day, Oscar Williams, a young man, twenty-six years of age, residing in Boonville, went to the hotel and bought a pint of liquor from appellant, for which he paid the sum of $3. He found appellant in the yard back of the hotel and appellant took him into the hallway of the hotel, where the bottle of liquor was handed to him and the money paid in exchange for the same. Williams said that a strange man in Boonville with the "Honey-Bunch Show" gave him the $3 and asked him to go to Mr. Sappington and get a pint of gin. He said he got "gin," but he also said that the liquor he got sometimes goes by the name of "whiskey." Williams was stopped by a deputy sheriff a few steps from the front door of the hotel and taken to the office of the prosecuting attorney, where the sheriff took charge of the bottle of liquor. He told the officers he got the liquor from appellant, and "within thirty minutes" the officers searched the hotel and found there, under a stairway, 14½ gallons of "hootch, moonshine, corn whiskey."

The sheriff said that he had "arrested some two hundred moonshiners and bootleggers and examined their wares" and in that way had become familiar with "hootch, moonshine and corn whiskey." He further said that the liquor in the bottle "appeared to be exactly the same" as the fourteen and one-half gallons of "hootch, moonshine, corn whiskey" found under the stairway at the hotel, and that it had the same odor.

Captain G. T. Irvine, an instructor in chemistry for twenty years at Kemper Military School, testified that he analyzed the liquor in question and that it contained "57% by volume of ethyl alcohol." When asked if ethyl alcohol goes by any other name, he said: "It is sometimes called whiskey and sometimes called hootch, sometimes called moonshine, sometimes called corn whiskey, sometimes called white mule." On cross-examination, he said that whiskey made according to Government regulations contained, on an average, "somewhere around thirty percent" of alcohol; also, that whiskey "classed as 100 proof" contained fifty per cent of alcohol.

Appellant took the stand in his own behalf and denied that he sold the bottle of liquor to Oscar Williams. He also said, on direct examination, that he pleaded guilty to a charge based on the unlawful possession of the 14½ gallons of liquor found on his premises and paid a fine of $300, and served thirty days in jail as punishment therefor. His counsel offered to prove by him that he was induced to plead guilty to the charge above mentioned by reason of "an understanding with the proper authorities" that this charge would be dismissed. On the objection of the State, this evidence was excluded.

Appellant's wife and another witness testified that, on the afternoon in question, Oscar Williams came to the hotel and talked to appellant back of the hotel, but appellant did not go into the hotel with him. Other witnesses for appellant, including his father-in-law and brother-in-law, testified that, after this occurrence and before the trial, Oscar Williams told appellant in their presence that he got the bottle of liquor from a "darkey," and that he told the officers he got it from appellant, in order to escape punishment for having the liquor in his possession.

I. We find no merit in appellant's complaints as to the admission and exclusion of evidence. The record discloses that no objection was made to the sheriff's testimony relating to the search of the hotel and the 14½ gallons of liquor found there. It further appears, as above indicated, that appellant testified, voluntarily and on direct examination by his own counsel, as to his plea of guilty to another charge, based on the unlawful possession of the liquor found in the hotel. It is plain, therefore, that no error was committed by the trial court in the admission of this evidence. Nor was

it error for the court to exclude appellant's testimony that he was induced to plead guilty to the other charge mentioned by the promise of the prosecuting attorney to dismiss this charge. Any promise of that kind, if actually made, was not binding on the State and could not, in any way, be used as a defense, or be material for any purpose, in this case.

Error is also assigned to the action of the trial court in permitting the State to offer in evidence the bottle of liquor in question, because appellant was charged with the sale of hootch, moonshine and corn whiskey and the State's evidence showed that the bottle contained gin. True, there was some evidence tending to show that it was gin, but there was also evidence tending to show that it was hootch, moonshine and corn whiskey. However, it was the subject-matter of the alleged sale and, therefore, clearly admissible in evidence, regardless of its name or character, as designated by the witnesses. If it was shown, by the evidence, to be gin and not hootch, moonshine or corn whiskey, as contended by appellant, the exhibition of it before the jury could not have been harmful to appellant. It follows that no error was committed in this particular.

II. The motion for a new trial contains a general complaint as to the instructions given to the jury but fails to point out wherein they were erroneous. Under the present rule, this complaint presents nothing for our review. [New Sec. 4079, Laws 1925, p. 198; State v. Standifer, 289 S. W. 856.]

III. The contention that the verdict of the jury is contrary to the law and the evidence, and resulted from passion and prejudice on the part of the jury, must also be ruled against the appellant. If the liquor in question is commonly known and designated as hootch and moonshine and corn whiskey, as shown by positive evidence in this case, then, it is only fair to assume that our lawmakers had that fact in mind when they framed Section 21 of the 1923 Prohibition Act, on which this prosecution is based. In this connection, it is well to remember the general purpose and intention of the act, plainly expressed in Section 1, as follows:

"This entire act is hereby declared, and shall be deemed and construed, to be an act of the General Assembly of the State of Missouri, for the protection of the economic welfare, peace, health, safety and morals, of its inhabitants, and all of the provisions of this act shall be liberally construed for the accomplishment of said purposes, or any thereof." [Laws 1923, pp. 236, 242.]

Moreover, this court has held, in numerous recent cases, that evidence of this character is sufficient to sustain a conviction on this charge. [State v. Black, 289 S. W. 804; State v. Brown, 285 S. W. 995; State v. Wright, 280 S. W. 703; State v. Brock, 280 S. W. 48.]

The punishment assessed by the jury in this case consists of the only fine and the shortest term of jail imprisonment prescribed by the act, while the range of punishment extends as high as imprisonment in the penitentiary for five years. The feeling of the jury, as expressed in their verdict, is indicative of leniency rather than prejudice, and there is nothing in the record tending to show any prejudice on their part. A mere charge of this kind, unsupported by proof, is of no avail. [State v. Helpley, 279 S. W. 701; State v. Renfro, 279 S. W. 702.]

IV. It is further contended that the trial court erred in failing to reprimand the prosecuting attorney, and in failing to discharge the jury, when he made the following references to appellant, in his argument to the jury:

"The operation of the hotel by the defendant is a mere sham and ——.

"It is he and his type that have no regard for the laws of the land."

The court properly sustained the objection to these remarks, and, while we concede that a reprimand would have been justifiable, yet, in our opinion, the remarks complained of were not of such a character as to require the discharge of the jury. This court has always looked with disfavor upon the conduct of a prosecutor who indulges in abusive or unwarranted remarks concerning any person on trial for any offense, and in many instances we have held that such conduct was sufficient ground for the reversal of a judgment of conviction, but this question must be determined by the facts and circumstances of each case. And, considering the nature of the offense charged, the character of the evidence adduced and the punishment assessed by the jury in this case, it is apparent that the jury was not influenced by the improper remarks of the prosecutor in this instance. In this situation, there is no occasion for our interference with the result of the trial on that ground. [State v. Harmon, 296 S. W. 397; State v. White, 299 Mo. 599, 253 S. W. 724; State v. Strait, 279 S. W. 109.]

No error appears in the record proper. The information is sufficient and the verdict is responsive and in approved form. The judgment is affirmed. *Higbee* and *Davis, CC.,* concur.

PER CURIAM:—The foregoing opinion by HENWOOD, C., is adopted as the opinion of the court. *Walker, J.,* and *White, P. J.,* concur; *Blair, J.,* concurs in result.