THE STATE v. GUS HOWARD, Appellant.—23 S. W. (2d) 16.

Division Two, December 11, 1929.

88

*J. H. Whitecotton, J. W. Wright, Jr.*, and *Jas. E. Boggs*, for appellant.

*Stratton Shartel,* Attorney-General, *Hibbard C. Whitehill,* Special Assistant Attorney-General, for respondent; *J. A. Walden,* of counsel.

90

HENWOOD, C.—An information was filed in the Circuit Court of Randolph County, at Huntsville, by which the defendant was charged with the unlawful sale of "hootch, moonshine, corn whiskey." The venue was changed to the Circuit Court of Boone County, where he was convicted and sentenced to imprisonment in the penitentiary for three years. In due course, he appealed.

James Harker, the prosecuting witness, testified: He had lived in the city of Moberly, Missouri, and that vicinity for twelve years. At the time in question, he was employed by the mayor, chief of police and city attorney of Moberly to procure evidence against "bootleggers," or evidence "of liquor violations." He had known the defendant ten years. In the month of December, 1925, the defendant was a bartender in the "old Turner & Ruffel saloon building" in the

city of Moberly, in Randolph County. About 2:30 o'clock in the afternoon of December 23, 1925, he went to this place of business and asked the defendant if he could get "half a pint." The defendant said "all right." Then, in the "little room" at the rear of the counter, the defendant filled a bottle with liquor from a jug and "handed it over" to him. He paid one dollar to the defendant for the bottle of liquor. About two o'clock in the afternoon of the next day, December 24, 1925, he went to the same place and purchased another bottle of the same kind of liquor from the defendant and paid one dollar to the defendant therefor. He identified these two bottles of liquor (State's Exhibits A & B) by the labels thereon. He labeled each bottle immediately after it was purchased. He knew "various kinds of intoxicating liquors" from experience. He took a drink out of each of these bottles of liquor. He "would call it corn liquor, or corn whiskey, or hootch, moonshine, corn liquor. It is known as corn liquor, hootch, or moonshine." He could tell what it was by "the taste of it; the smell of it; the kick to it."

The two bottles of liquor (State's Exhibits A & B) were offered in evidence and exhibited before the court and jury.

Al Fleming testified: At the time of the trial, he had been Chief of Police of Moberly for five years, and had known the defendant for about ten or fifteen years. During Christmas week of 1925, the defendant worked "in a soft drink—Turner & Ruffel's place" in Moberly. Brack Stevens was the owner of the place. He saw the defendant working there at the time mentioned. The two bottles of liquor (State's Exhibits A & B) were turned over to him by the Mayor of Moberly and he had possession of them up to the time of the trial. He had the liquor in the bottles analyzed by Miss Perley at the High School. From the analysis, he knew it was "white corn whiskey, hootch, moonshine," and, in his opinion, it was intoxicating.

The defendant, testifying in his own behalf, said he had lived in Moberly about twenty-five years, and was employed there as a bartender prior to the enactment of the prohibition laws; that he worked at the Stevens soft-drink parlor, the place in question, from sometime in February until sometime in August, 1925, but was not employed there during the month of December, 1925; that he did not know the witness James Harker until this prosecution started; and that he did not sell any intoxicating liquor to Harker in December, 1925, nor at any other time since the prohibition laws became effective. On cross-examination, he admitted that he was "in and around" the soft-drink parlor after he quit working there, but "not probably more than any other place;" also, that he had been convicted, in the Circuit Court of Randolph County, "of selling intoxicating liquor, whiskey," and "of driving a car while intoxicated."

G. W. Connell and George Schwab, testifying for the defendant, said they were the only clerks or employees at the Stevens soft-drink parlor in the month of December, 1925; that the defendant "was in and out and around there," but did not work there, nor make any sales there, during the month of December, 1925; and that they did not remember of ever seeing the witness James Harker in the soft-drink parlor. On cross-examination, Schwab admitted that, in another prosecution of the defendant in the Circuit Court of Monroe County, which involved the same facts, he testified that the defendant was manager of the Stevens place in December, 1925. He said he did not know whether the defendant was manager or not, but testified to that effect because the defendant "was in and out and around the place a good deal." In this connection, he was further cross-examined as follows:

"Q. Do you know at this time whether he was manager in December, 1925, or not? A. Well, I suppose he was—he was in and around there.

"Q. You think he was manager in December, 1925? A. Well, I guess he was."

In rebuttal for the State, Al Fleming, chief of police, and James McAdams and John Frazier, police officers, testified that the defendant's reputation in the community, for truth and veracity and general morality, was bad.

In rebuttal for the defendant, James Terrell, who lived "about a mile and a half" south of Moberly, and William Hulen, a salesman and member of the city council of Moberly, testified that the defendant's general reputation in the community, for truth and veracity and morality, was good.

Other pertinent facts and proceedings will be noted in the further discussion of the case.

I. The defendant first complains of the action of the trial court in overruling his application for a continuance. The application was based upon the absence of the defendant's witness J. B. Stevens, owner of the soft-drink parlor. The defendant said, in the application, that the witness Stevens was sick and confined to his home in Moberly and unable to attend the trial or to give an intelligent deposition; and that he did not know of the serious condition of this witness until July 11, 1927, three days before the trial, when an attempt was made to take his deposition. The application was supported by the affidavit of Dr. G. H. Jaeger, "a regular practicing chiropractor." In his affidavit, dated July 13, 1927, one day before the trial, Dr. Jaeger said that J. B. Stevens was not able, physically, at that time, to leave his home, nor, in his opinion, to give his deposition intelligently. It was admitted that counsel for

the defendant did not suggest, nor complain of, the inability of Stevens to give an intelligent deposition at the time his deposition was taken, on July 11th. The deposition had not been filed at the time the case was called for trial, but it was admitted that counsel for the defendant had a copy of the deposition, at that time, and the prosecuting attorney waived objection to the introduction of a copy of the deposition in evidence, in lieu of the original, in the event the original was not filed during the course of the trial. The trial court had no opportunity to examine the deposition, nor a copy thereof, at that time. Under such circumstances, the trial court did not abuse its discretion in refusing to grant the defendant a continuance. The original transcript of the deposition of Stevens was filed, after the trial, in connection with affidavits tending to show why it was not filed before the trial. The deposition discloses that Stevens was examined, and cross-examined, at length, and that he displayed no lack of ability to answer all inquiries intelligently. It further appears, from the deposition, that the testimony of Stevens would have been merely cumulative, had it been available, being substantially the same as the testimony given at the trial by the defendant's witnesses Connell and Schwab. Why the deposition was not filed until after the trial, and who was responsible for the delay in filing the same, we need not decide. It will suffice to say that the defendant lost nothing by the absence of Stevens, nor by the absence of his deposition, and that he was not deprived of any substantial right by the action of the trial court in overruling his application for a continuance. In support of these conclusions, see State v. Kindred, 148 Mo. 270, 49 S. W. 845; State v. Temple, 194 Mo. 237, 92 S. W. 869; State v. Tracy, 294 Mo. 372, 243 S. W. 173; State v. Van Valkenburgh (Mo. Sup.), 285 S. W. 978; State v. Taylor (Mo. Sup.), 8 S. W. (2d) 29.

II. The challenge of the sufficiency of the evidence cannot be seriously considered. The State's proof clearly establishes that the defendant sold, illegally, two bottles of intoxicating liquor, and that said liquor was "white corn whiskey, hootch, moonshine," known as "corn liquor, hootch, or moonshine." Convictions based upon similar proof have been upheld by this court in numerous cases. [State v. Griffith, 311 Mo. 630, 279 S. W. 135; State v. Brock, 280 S. W. 48; State v. Brown, 285 S. W. 995; State v. Black, 289 S. W. 804; State v. Sappington, 319 Mo. 1, 2 S. W. (2d) 729.]

III. It is said that the trial court erred in admitting the testimony of the witnesses Harker and Fleming as to the character of

the liquor in question, and also in admitting the testimony of the witnesses Fleming, McAdams and Frazier as to the bad reputation of the defendant for truth and veracity and general morality.

Harker testified that he knew "various kinds of intoxicating liquors" from experience; that he took a drink out of each of the bottles of liquor which he bought from the defendant; that he could tell, by "the taste of it, the smell of it, the kick to it," that it was "corn liquor, or corn whiskey, or hootch, moonshine, corn liquor;" and that it is known as "corn liquor, hootch or moonshine." This testimony was objected to on the ground that the witness had not qualified "as an expert." We have repeatedly held that lay witnesses of experience in handling or drinking hootch, moonshine, and corn whiskey will be permitted to identify liquor of that character by tasting it or smelling it. [State v. Brock, supra; State v. Brown, supra; State v. Black, supra; State v. Sappington, supra; State v. Stough, 318 Mo. 1198, 2 S. W. (2d) 767; State v. McGinnis, 7 S. W. (2d) 259.] Fleming testified, *without objection*, that he had the liquor analyzed by Miss Perley at the High School; that, from the analysis, he knew it was "white corn whiskey, hootch, moonshine;" that, in his opinion, it was intoxicating; and that his testimony, as to the character of the liquor, was not based upon his own experience nor upon any test made by him, but entirely upon the analysis of the liquor which was made at the High School.

Where, as in this instance, the defendant testifies in his own behalf, his character as a witness may be attacked, and, for that purpose, the State may show that his reputation for truth and veracity is bad, and that his reputation for morality is bad. [Sec. 4036, R. S. 1919; State v. Hastings (Mo. Sup.), 285 S. W. 89, and cases cited.] Therefore, no error was committed in admitting the testimony of the State's rebuttal witnesses, Fleming, McAdams and Frazier, as to the bad reputation of the defendant for truth and veracity and general morality.

IV. It is also said that the jury was prejudiced by the prosecuting attorney's reference to the conviction of the defendant in a case which had not been finally disposed of. In this connection, the record shows that the prosecuting attorney, in his cross-examination of the defendant, asked the defendant whether he had been convicted, in the Circuit Court of Boone County, in April, 1927, of the offense of transporting "hootch, moonshine, corn whiskey;" and that, upon the objection of the defendant and the suggestion of no final disposition of the case referred to, the court sustained the objection and directed the jury to disregard the prosecuting attorney's question. Consid-

ering the defendant's admissions of two previous convictions, it can hardly be said that the jury was prejudiced by the prosecuting attorney's inquiry as to whether or not he had been convicted in another case, although there had been no final determination of said case. However, the action of the court, in sustaining the objection and in directing the jury to disregard the prosecuting attorney's question, was sufficient to overcome the prejudicial effect, if any, of this incident.

V. Finally, it is urged that the trial court erred in giving the State's instructions numbered 1 and 3 and in refusing the defendant's instruction marked "E."

Counsel contend that the State's Instruction 1 was broader than the information because it authorized the jury to convict the defendant if they found that he sold "hootch," "moonshine" or "corn whiskey," whereas he is charged, in the information, with selling "hootch, moonshine, corn whiskey." There is no merit in this contention. The defendant is charged with one offense which may be committed in different ways, namely, by selling hootch, or moonshine, or corn whiskey, or all of them. [Sec. 21, Laws 1923, p. 242; State v. Pinto, 312 Mo. 99, 279 S. W. 144.] It follows that this instruction, which predicated a conviction upon the finding that the defendant sold hootch, moonshine or corn whiskey, did not broaden the issue. [See ruling on similar instruction in State v. Griffith, 311 Mo. 1. c. 643, 279 S. W. 1. c. 139.]

Counsel attack the State's Instruction 3 on the ground that it is confusing and misleading. We are unable to find any language in this instruction by which the jury could have been confused or misled. It is a correct declaration of the law relating to the province of the jury in passing upon the weight of the evidence and the credibility of the witnesses.

Counsel say that the words "reasonable doubt" were not defined in any of the State's instructions, and that the court should have given the defendant's Instruction E, which was offered for that purpose. The State's Instruction 2 reads as follows:

"The court instructs the jury that the defendant is presumed to be innocent and it devolves upon the State throughout the trial to prove his guilt beyond a reasonable doubt;

*"But such a doubt to authorize an acquittal on that ground alone, should be a substantial doubt of guilt arising from the evidence or lack of evidence in the case and not a mere possibility of innocence."* (Our italics.)

96

This instruction embodies the true doctrine as to the rule of reasonable doubt in criminal cases. [State v. Nerzinger, 220 Mo. 1. c. 49, 119 S. W. 1. c. 383.] And, having given this instruction at the request of the State, the court did not commit error in refusing the defendant's Instruction E, which covered the same subject-matter. [State v. Hicks, 319 Mo. 28, 3 S. W. (2d) 230.]

The information and the verdict are both in approved form, and we find no prejudicial error in the trial proceedings. The judgment is accordingly affirmed. *Davis* and *Cooley, CC.,* concur.

PER CURIAM:—The foregoing opinion by HENWOOD, C., is adopted as the opinion of the court. *Blair, P. J.,* and *White, J.,* concur; *Walker, J.,* absent.