STATE of Missouri, Respondent,

v.

Albert MITCHELL and Jerry Ruddle,
Appellants.

No. 44407.

Supreme Court of Missouri.

Division No. 2.

March 14, 1955.

Tom A. Shockley, Waynesville, for appellants.

John M. Dalton, Atty. Gen., Edward F. Aylward, Asst. Atty. Gen., for respondent.

BROADDUS, Special Judge.

The appellants, Albert Mitchell and Jerry Ruddle, together with one Levi Hodge were charged in the circuit court of Phelps County with the crime of robbery in the first degree. Levi Hodge was granted a change of venue to Texas County. The appellants Mitchell and Ruddle were granted a change of venue to Maries County. There they were convicted and the jury assessed the punishment of each at five years imprisonment in the penitentiary. They have duly perfected their appeal to this court.

The evidence on behalf of the State tends to show the following: Carl Mueller,

the prosecuting witness, lived in Rolla, Missouri. He worked as a janitor at Fort Leonard Wood. He received his pay on November 7, 1952, and, after attending a picture show, drove in his 1939 Ford to the "63 Club," which is a tavern located at the edge of Rolla. He ordered a beer and Albert Mitchell, one of the appellants, who was there, asked him to come and sit beside him and talk. The two sat at a booth with Jerry Ruddle, also an appellant. After a while Mitchell left for town to get some liquor, and returned with Levi Hodge. Then all of them went outside and Mitchell, Ruddle and Hodge started shooting dice. Mueller came back into the tavern and ordered another beer. The others returned and all four of them talked. Shortly before the tavern closed Mitchell, Ruddle and Hodge started to go home, as did Mueller. As Mueller started to get into his car Mitchell called and asked him to get in the car, he (Mitchell) was driving, and talk a while. Levi Hodge was in the back seat of this car. Ruddle was in the front seat, and Mitchell behind the wheel. Mueller got in the back seat. They asked Mueller if he wanted a drink, and he said, "a little one."

Mitchell then backed the car away from the tavern and drove south on Highway No. 63. After going a short distance he turned off on to a side road and stopped. They offered Mueller a drink and he took one, and the rest all had a drink. Then Levi "grabbed" Mueller around the neck and started choking him. Mueller broke away, opened the car door and ran down the road. They yelled to him to come back. When he did not, Mitchell overtook him with the car. Mitchell and Ruddle got out of the car and came over "and started apologizing for what Levi had done to me." They asked Mueller to get back in the car with them. He got in the front seat. Shortly thereafter Mitchell turned the car off the highway again. Mueller said he "knew there was something going to come off again when they pulled off, and so when they stopped, I opened the door and started to get out and go to my car, and Mitchell grabbed ahold of me. He hit me on the side of the face. Q. What did he hit you with, if you know? A. Well, the only thing I could see was his fist. Q. All right, tell the jury what happened? A. And I went to my knees. Of course, I was stunned a little. And I got up and Ruddle got ahold of me, and then he was wrestling me around or what you call holding me, both arms around me, and he had his hand in my pockets and,—in my back pockets, and he got my billfold. And that is when I broke and run, which I couldn't do a very good job of. And then I got in my car and went home."

On the morning of November 8, 1952, Dr. Harry Davis of Rolla made a physical examination of the prosecuting witness. Dr. Davis testified that the right side of Mueller's face was discolored and swollen; that "he couldn't open his mouth, his nose, especially the right side, was full of clotted blood;" that "he could not see from the right eye;" that "he had an abrasion to the right shoulder and the right arm. This arm could not be raised to do the normal manipulations that you ordinarily find characteristic of the shoulder joint." On November 10, 1952, Mueller came to Dr. Davis' office and X-rays were taken. These disclosed a fracture of "the bone that holds the upper teeth, on the right side." Dr. Davis saw Mueller every day, the 11th, 12th, 13th, 14th and 15th of November, 1952. On the 29th of that month he re-examined Mueller due to the latter's "extreme pain and not being able to move his lower jaw."

Appellant Ruddle took the stand and denied Mueller's version of what took place. Appellant Mitchell did not testify.

Mueller's pocketbook was found on the afternoon of November 9th about a block away from the courthouse in Rolla by the daughter of the Collector of Phelps County. She took it to her father at the courthouse. Upon opening it he found cards bearing Mueller's name, but no money. Mueller testified that at the time appellants took the purse from him it contained $44.

Appellants' first point is that the court erred in overruling their motion for judg-

ment of acquittal offered at the close of all the evidence, because the evidence disclosed that the prosecuting witness, Carl Mueller, was not a competent witness.

The transcript discloses that after the State had rested its case appellants offered a certified copy of the record of the Probate Court of Phelps County showing that on May 9, 1946, Mueller had been adjudged "to be a person of unsound mind and incapable of managing his affairs." Later the State offered a certified copy of another record entry of said Probate Court reciting that on June 30, 1948, said Mueller had been "restored to his right mind and capable of managing his affairs." It appears from the evidence that Mueller had been confined in a Veterans Hospital. He was discharged from that hospital when the Veterans Administration gave him "a rating of competency as of February 4, 1948."

■ Section 491.060 RSMo 1949, V.A. M.S., provides that: "The following persons shall be incompetent to testify: (1) a person of unsound mind at the time of his production for examination * * *." It is apparent that at the time Mueller was called as a witness, he was not under an adjudication of insanity or confined to a mental institution. When confronted with this exact situation in the recent case of McCrary v. Ogden, Mo.Sup., 267 S.W.2d 670, 672, this court said of the proffered witness: "He was presumed to be a competent witness and the burden was on defendants to show his incompetency by proof that he was then of unsound mind." In the instant case there was no such showing by appellants. In addition to this, when Mueller was placed on the stand there was no objection made to his competency by appellants. He was cross-examined at length by appellants' counsel. It was not until the close of all the evidence that appellants, by their motion for a directed verdict, asserted that Mueller was an incompetent witness. Under these circumstances the competency of the witness was waived. State v. Crab, 121 Mo. 554, 564, 26 S.W. 548; State v. Emrich, Mo.Sup., 250 S.W.2d 718, 724, 725.

■ Appellants next contend that the court should have submitted to the jury "the question of whether or not the prosecuting witness was sane or insane at the time of the alleged assault, and at the time he was testifying in the case." This contention is without merit.

In the case of State v. Witherspoon, 231 Mo. 706, 724, 133 S.W. 323, 328, this court stated that "no citation of authorities is necessary in support of the well-recognized principle of law that the competency of a witness is a question for the court and not for the jury * * *."

The next assignment of error is that the court did not instruct on robbery in the second degree. Robbery in the second degree under our statute, § 560.125, is predicated on a fear that the threatened injury to the victim may be inflicted "at some different time," either to his own person or property or to the person of any relative or member of his family.

■ It is true that the court should instruct upon all questions of law arising in the case which are necessary for the information of the jury in rendering its verdict, but it should also limit the instructions to the law applicable to evidence presented to the jury. State v. Stanton, Mo. Sup., 68 S.W.2d 811, 813. In the instant case there was no evidence of second degree robbery.

Appellants next say that the court erred in failing to give an instruction on robbery in the third degree. Under our statute, § 560.130, robbery in that degree is thus defined:

"If any person shall, either verbally or by a written or printed communication, accuse or threaten to accuse another of a felony, or shall threaten to do any injury to the person or property whatever of anyone, with a view or intent to extort or gain any money or property of any description belonging to another, and shall, by intimidating him with said accusation or threat, extort or gain from him any money or property, every such offender shall be deemed guilty of robbery in the third degree."

There was no evidence that appellants accused or threatened to accuse Mueller of a felony, nor was there any evidence that they threatened to do any injury to his person or property with a view or intent to extort or gain any money or property from him. Thus there was no basis for the giving of such an instruction. See State v. Lasky, Mo.Sup., 133 S.W.2d 334, 336.

See, also, 363 Mo. 459, 251 S.W.2d 654.

Appellants' last complaint is that the court erred in failing to instruct on larceny from the person. Larceny from the person is the act of taking the property from the person by merely lifting it from one's person or pocket. State v. Parker, 262 Mo. 169, 170 S.W. 1121, L.R.A.1915C, 121. There is no evidence in the instant case that would justify such an instruction. See State v. Stanton, supra.

We find no prejudicial error in the record. The judgment is affirmed.

ELLISON, P. J., and LEEDY, J., concur.