STATE of Missouri, Respondent,

v.

Wilbert Roscoe McMILLIAN, Appellant.

No. 47774.

Supreme Court of Missouri,

Division No. 2.

Oct. 10, 1960.

E. C. Lockwood, Mountain Grove, for appellant.

John M. Dalton, Atty. Gen., Hugh P. Williamson, Asst. Atty. Gen., for respondent.

STORCKMAN, Judge.

The defendant, Wilbert Roscoe McMillian, was found guilty of forcible rape and his punishment was assessed by the jury at life imprisonment. After his motion for new trial was overruled, the defendant was sentenced in accordance with the verdict. The defendant was present at all times during the trial and was also represented by court-appointed counsel who, with commendable fidelity to his client's cause, has briefed the case in this court. The first assignment of error is that the trial court should have directed a verdict of acquittal.

The defendant had been living and working on a ranch owned by his brother, Charles S. McMillian, located about four or five miles from the town of Norwood in Wright County. On Saturday morning, September 27, 1958, the defendant, having expressed a desire to spend the week end in Springfield, was given $20 by his brother and was driven to Norwood by Charles's wife where the defendant expected to take a bus or hitchhike his way to Springfield. The evidence tended to show that the defendant was at Owen's Cafe in Norwood during the day, and that he spent Saturday evening at Club 60 near Mountain Grove drinking intoxicants with several acquaintances. One of the persons was Joe Hill, a son of the prosecuting witness. Between 11:00 and 11:30 p. m., the defendant and his companions left the Club 60 and drove to Norwood where Joe Hill was let out of the automobile on the south side of town at the home of a Mrs. Pasley. The defendant got out of the automobile near the post office, saying that he was going to find someone to drive him back to his brother's home.

Nova Meade, who lived directly across the street from the prosecuting witness, identified the defendant as the man who came to his house at about midnight on September 27 and asked where Joe Hill lived, saying that Hill had gotten some money off of him. Mr. Meade told the defendant that Hill lived across the street and showed him the house where the prosecuting witness, Mrs. Belle Hill Gosvenor, lived. Mr. Meade then went back to bed and heard nothing more during the night.

Mrs. Gosvenor, the prosecuting witness, 85 years of age, testified that on the Saturday night in question she was alone in her home, which consisted of two rooms and a detached kitchen. She locked all of the doors and went to bed early; there were screens on the windows. She was awakened by a man knocking on the door. He was cursing and demanding that she open the door. She became frightened and went into the other room to hide thinking that he would leave. Instead, the man entered the house, apparently through a window from which the screen had been removed. He seized the prosecuting witness and in her words, he "throwed me flat on my back and jumped on me and went to rapin' me." She cried out but the intruder struck and beat her and threatened to kill her. She testified that he was in the house about an hour and repeatedly assaulted her sexually, both naturally and unnaturally; that she begged him to stop; that he hurt her so badly she couldn't keep from hollering and, when she did, he would hit and beat her. She got away once and was half way over to Nova Meade's house when the intruder caught her and brought her back. He tore her clothes off and struck her repeatedly

until she was "knocked out". She found herself near a gate which she recognized and managed to get to the Hilton home which was nearby. The lights were not on in the house and her eyesight was not good, but she testified that the intruder was a big man and weighed over 200 pounds. She further testified that he jumped on her and she thought that he had caved her breasts in and that he tried to make her give him some money, but she told him she didn't have any.

Mrs. Hilton testified that the prosecuting witness appeared at her house early on the morning of September 28th completely naked except for a pair of socks; that she was badly bruised and in a dazed condition. She did not know at exactly what time the prosecuting witness arrived, but it was about 2:20 a. m. when Mrs. Hilton "got her settled and covered up". Mrs. Gosvenor remained at the Hilton home the rest of the night and was examined by Dr. Richard Mitchum who found that she was suffering from multiple contusions and abrasions inflicted several hours previously and that two of her ribs were fractured at the nipple line. He also found contusions and abrasions of the vulva, both internal and external, and she was in a condition of shock and agitation. She was later taken to the hospital where she was further examined and received treatment.

The sheriff of Wright County arrested the defendant on the morning of September 28th at the home of his brother. The sheriff testified that the defendant admitted having had intercourse with the prosecuting witness the night before but denied beating her. The sheriff asked the defendant if he knew she was an elderly lady, and the defendant replied, "Yeah, that's one thing I'm ashamed of." The testimony of the sheriff as to the admissions made by the defendant was corroborated by a deputy sheriff and the county clerk of Wright County. The sheriff and the deputy sheriff also testified that when they went to Mrs. Gosvenor's home, they found clothes strewn on the floor; the slats of the bed had fallen to the floor; the bedding was down on the slats inside the railing of the bed; and there were spots of blood on the sheets.

The defendant did not testify; his defense was insanity and his principal instruction submitted this theory. The fundamental basis of the defense of insanity was the record of the psychiatric examination of the defendant on February 1, 1956, at the Alton State Hospital, which is operated by the Department of Public Welfare of the State of Illinois. This record, introduced in evidence by the defendant, reads as follows:

"This 46-year-old separated white male was readmitted to this hospital as a voluntary patient for the third time 12–8–55. He had two previous admissions to this hospital, in April 1954 and November 1954. The diagnosis both times was: 'Sociopathic Personality Disturbance, Antisocial Reaction'.

"According to the social history, the patient's father drank heavily. One of his brothers also drinks too much. When the patient was about two years of age, he had coma for about two days, associated with high fever for several days. The patient is of low average intelligence. He showed alcoholic and disorderly tendencies with occasional criminal reaction. He spent a lot of time in various jails or penal institutions for various charges, as rape in 1931; assault with a deadly weapon in 1938. He was involved in road gangs and was sentenced at Monroe, Louisiana in 1941. He has been arrested and fined several times for drinking, fighting, peace disturbance and destruction of property. In 1945 he was sent to Menard Penitentiary, Illinois, for a bad check charge and was released after 7 years, in 1952. In 1954, he was picked up in Mt. Vernon, Ill., when he again wrote a bad check. He apparently has had a rather poor conception of prevailing moral and social standards and he was inclined toward disorderly and rather rowdy behavior. He goes on drinking sprees. They do not occur very often but continue at times for four and five weeks. When he drinks, he is argumentative and noisy but usually not com-

bative. He had been drinking the entire time since he was released from this hospital in December 1954. He was anxious to get a job. He roamed around the country. Never kept a job longer than two months because of his previous record. About a week prior to admission, he left home to find employment at Eldorado, Ill., but after four days returned home in a drunken condition. He was violently ill, vomited, his eyes had a glassy look. He admitted excessive drinking and taking heroin. He wanted to return to this hospital as soon as possible to quit drinking.

"On admission, he was found under the influence of alcohol. He was well-built, of athletic body type, in good physical condition. Blood pressure was 160/90. He was quiet and cooperative. Talked relevantly and coherently, was oriented in all spheres.

"Following his admission, he became well adjusted to the ward routine. Has been quiet and cooperative. Coherent and relevant in his speech. He has been well oriented in all spheres. Denied having any delusions or hallucinations. Admitted heavy drinking but denied DT's. He calculated well. His memory seemed appropriate. He was discharged as improved.

"Diagnosis: 'Sociopathic Personality Disturbance, antisocial Reaction. Without Psychosis.' "

The father of the defendant, two brothers, and the wife of one of them testified for the defense. Their testimony was generally in accord with the statements in the hospital record and tended to prove that when sober the defendant was well behaved, but when intoxicated he became combative and possessed a fury that sometimes resulted in his committing physical assaults upon members of his own family. Dr. F. E. Worthy, an osteopathic physician, testified he had seen the defendant in jail on three or four occasions, that the defendant complained that he had head pains and the doctor gave him sedatives. The doctor interpreted some of the medical terms which

appeared in the hospital record and testified that "without psychosis" meant that the man was not crazy. He further testified that the defendant was not "crazy" when he first saw him and "talked as good a sense as anyone" on the occasions when the doctor saw him in jail. Other evidence will be referred to in the course of the opinion.

■ The defendant moved for a directed verdict of acquittal at the close of the state's case and again at the conclusion of all of the evidence. The defendant's contention that his motion at the close of state's case should have been sustained cannot be considered because the objection based on such refusal was waived by his offering evidence in his own behalf. State v. Scott, Mo., 299 S.W.2d 526, 528 [1]. Consequently, the propriety of the submission must be determined on a consideration of all of the evidence in the case. In his brief the defendant indulges in many statements and inferences outside the record which relate chiefly to quarrels asserted to have occurred between him and Joe Hill over money matters during a day and evening of drinking and to the latter's alleged mistreatment of his mother, the prosecuting witness. But such assertions, not being supported by evidence, have no standing in the case.

■ The evidence was ample to support the charge of forcible rape. The testimony of the prosecuting witness tended to establish that she was threatened with death and brutally beaten by her attacker and that sexual intercourse was forced upon her under these conditions. Her testimony was fortified by medical and lay testimony as to her physical condition after the attack and by the evidence of the wrecked condition of the bed, the blood on the sheets, and the disarray of her home. In seeking to avoid the proof of his criminal agency, the defendant urges that the prosecuting witness did not identify him as her attacker. The state concedes that she did not do so; but it was not necessary that the defendant's criminal agency be proven by direct evidence. His presence near the home of the prosecuting

witness a short time before the commission of the crime was proven. Evidence that the defendant admitted having had sexual intercourse with the prosecuting witness, although he denied beating her, also tended to prove he was the perpetrator of the crime and was not controverted. The defendant also contends that the testimony of the prosecuting witness was so incredible and unworthy of belief as to furnish no foundation for submitting to the jury the issue of the defendant's guilt. The defendant's specifications and arguments in this regard are without merit.

■ The defendant further contends that corroborating testimony of the witnesses tending to fix the time of defendant's visit to the home of the prosecuting witness was inconsistent with her testimony and undisputed physical facts. We find no such inconsistency. There was substantial evidence to justify the submission of the case to the jury, and the appellate courts will not interfere with a verdict that is supported by substantial evidence. State v. Sheard, Mo., 276 S.W.2d 196, 199 [3–5]; State v. Lippman, Mo., 222 S.W. 436. The court did not err in refusing to direct a verdict of acquittal.

■ The defendant next contends that the trial court erred in failing to instruct the jury on all of the issuable facts in the case as required by § 546.070 RSMo 1949, V.A.M.S. The first assignment in this category is: "That in regard to any pretrial statement made by the defendant he was entitled to the benefit of anything he said for himself". Several reasons might be assigned why this contention is without merit, but it is sufficient to say that there is no specification of what is intended and we have been unable to find in the record, including the motion for new trial, anything to which the defendant alludes. The allegation is much too general to preserve anything for review and it is accordingly denied.

Next the defendant urges that the court should have instructed the jury that it de-volved upon the state to prove the presence of the defendant at the time alleged and that the testimony of the prosecuting witness and of other witnesses in corroboration of her must be consistent with each other and inconsistent with the defendant's innocence. Instruction No. 1 requires the jury to find that the defendant committed the offense of forcible rape upon the person of Belle Hill Gosvenor, thereby of necessity requiring a finding that the defendant was present at the time and place charged. Instruction No. 2 places on the state the burden of proving the defendant's guilt. Instruction No. 3 adequately covers the subject matter about which the defendant complains in the second portion of this assignment. The charge of error is denied.

■ The third and last item under this point is that the court should have instructed the jury that it was not to consider evidence of defendant's commission of other crimes having no connection in time or place with the crime charged. None of the state's evidence made any reference to the commission of other crimes. The only evidence of other offenses committed by the defendant was contained in the hospital record, defendant's Exhibit 1, set out above, and by the defendant's father while testifying on behalf of the defendant. Again, several valid reasons might be given for overruling this specification of error, but it is sufficient to say that no instruction was requested on this matter and none is required under the statute referred to. The court did not err in failing to so instruct the jury. State v. Mitchell, Mo., 276 S.W.2d 163, 165 [3, 4]; State v. Harris, Mo., 313 S.W.2d 664, 671 [8]; State v. Starr, 244 Mo. 161, 148 S.W. 862.

■ The third point in defendant's brief asserts that: "The court erred in sustaining the State's objection to the examination of Prosecuting Attorney Moody as to his motive in continuing the case of State vs. Joe Hill, then pending in that court, on a charge of drunken driving." This may properly be considered in connection with

the defendant's fourth point, which is that the court erred in sustaining the state's objection to the argument of defense counsel in which he undertook to comment upon the failure of the prosecuting attorney to endorse the name of Joe Hill on the information but "having him sworn with the other witnesses, keeping him in hiding, and continuing the criminal prosecution against him, so as not to show a conviction of record." Some of the assertions made by the defendant in this connection are not borne out by the record. As previously stated, Joe Hill was the son of Belle Hill Gosvenor, the prosecuting witness. The transcript does show that the defendant called the prosecuting attorney as a witness and developed that Joe Hill had been subpoenaed on behalf of the state and was present in the witness room. At the bench, and out of the hearing of the jury, the defendant offered to show that a drunken driving charge against Joe Hill had been continued so that he could testify as a witness and that the state had failed to call Joe Hill as a witness although he had been associated in some of the events preceding the commission of the offense charged. The defendant's announced purpose was to show "there has been testimony covered up here to shield Joe Hill." The offer of proof was rejected. Joe Hill did not become a witness for either party. The fact that a drunken driving charge against him was continued by the prosecuting attorney has not been shown to have any relevancy to any issue in the case. In the absence of such showing, the testimony offered was properly excluded. State v. Sappington, 319 Mo. 1, 2 S.W.2d 729, 730 [2].

In his argument to the jury, defendant's counsel further undertook to comment on the failure of the state to use Hill as a witness saying: "What about Joe Hill? Lurking around in the background with some statement never put on here. They intended, no doubt, to use him. When you go to put a witness on the stand and question him, 'Isn't there charges pending against you here?' Now——". The state's objection that the argument was not within the issues was sustained, but defendant's counsel continued with the charge that the state was demanding a conviction on speculative circumstantial evidence while "covering up for their own witness and refusing to put that man on the stand here to testify in behalf of his own mother." While it appears that Hill was one of the group of persons with whom the defendant associated on Saturday afternoon and evening, there is nothing in the record indicating that he could furnish any testimony that would tend to exculpate the defendant. So far as appears, he was let out of the automobile at Mrs. Pasley's home before the defendant got out at the post office and knew nothing of the crime until the following morning. The argument was wholly outside the issues made by the information and evidence and the court did not err in sustaining the state's objection. State v. Florian, 355 Mo. 1169, 200 S.W.2d 64, 68 [9, 10].

Next the defendant complains of the state's jury argument in four particulars. First they say it was inflammatory and prejudicial for the prosecuting attorney to tell the jury, "My God, the defendant knew where Joe Hill was." This followed the defendant's argument referred to above and was preceded by the prosecuting attorney's statement that Joe Hill was not a necessary witness. The record affirmatively shows that Joe Hill was not in hiding but was in or about the courtroom during the trial. He was available to the defendant as a witness if he had chosen to use him. Later the prosecuting attorney commented on the failure of defendant's mother to testify. She had been seated at the counsel table during the trial and defendant's counsel objected to the argument saying, "Under the rule his mother stayed in here and she couldn't testify. That's the reason she didn't take the stand." It does not appear that the mother was offered as a witness and that her testimony was refused. Nor is any reason given why she could not have complied with the rule and have been available as a witness had the defendant elected to do so. We

cannot escape the conclusion that the defendant's trial strategy was that his mother would be more valuable to him as an exhibit at the counsel table than as a witness on the stand.

The next complaint to the argument is that the prosecuting attorney referred to the defendant's "Terrible, terrible record in various states and wherever he might have been." We find no statement in that language in the transcript and conclude the reference must have been to this part of the state's argument which also includes the other specification in this category: " * * * the nearest thing you can do is to find him fully and completely guilty and rid all communities in the area—Indiana, Illinois, Louisiana, Missouri, or wherever this man right here might have wandered in his terrible, terrible past, would be to incarcerate him in the Missouri State Penitentiary for his natural life and then hope that some kind-hearted Board of Probation and Parole wouldn't parole him, but—

"Mr. Lockwood: We object to that.

"Mr. Huffman: —that isn't your place. You don't do anything about that.

"Mr. Lockwood: We object to that. That is not under the instructions of the Court, and we move that the Court declare a mistrial and discharge the jury.

"The Court: The request will be refused. Ladies and gentlemen of the jury, you will disregard the remarks about what was said about a parole."

■ The reference to the defendant's "terrible past" was doubtless a reference to the history shown by the hospital record, defendant's Exhibit 1, set out above. We cannot say that the statement was not a fair comment on the evidence. The request for a life sentence was within the instructions and the statute, § 559.260, which provides that a person convicted of forcible rape "shall suffer death, or be punished by imprisonment in the penitentiary for not less than two years, in the discretion of the

jury." The statement regarding the Board of Probation and Parole was adequately neutralized by the court's admonition that the jury disregard it. Discharging a jury for improper argument lies largely within the discretion of the trial court. Taken singly or collectively, the matters complained of in the state's argument do not constitute prejudicial error and the trial court did not abuse its discretion in overruling the objections and refusing to discharge the jury. State v. Cohen, Mo., 100 S.W.2d 544, 550 [15–17]; State v. Sheard, Mo., 276 S.W.2d 191, 195 [8, 9]; State v. Robertson, Mo., 328 S.W.2d 576, 584 [14, 15].

■ Defendant's final assignment is that: "The verdict was against the law and the evidence and was the result of passion and prejudice induced by the State's suppression of the evidence and inflammatory argument of State counsel." We have considered and disposed of the charge that evidence was suppressed and also the allegedly improper jury argument of the prosecuting attorney. Beyond that, the statement of the point preserves nothing for review. The general statement that the verdict was against the law and the evidence and was the result of passion and prejudice does not possess the particularity required to present a question for decision. Supreme Court Rule 27.20, V.A.M.R.; State v. Townsend, Mo., 327 S.W.2d 886, 887 [2]; State v. Burks, Mo., 257 S.W.2d 919, 920 [1]; State v. Jackson, 340 Mo. 748, 102 S.W.2d 612, 618 [9].

■ In addition to the questions presented in defendant's brief, we have examined the matters designated by S.Ct. Rule 28.02 as subject to review without assignment of error and find them to be legally sufficient. The transcript of the record demonstrates that the trial court exercised a strict regard for the rights of the defendant and accorded him a fair trial.

The judgment is affirmed.

All concur.