STATE of Missouri, Respondent,

v.

Paul Dean HAMPTON, Appellant.

No. 46461.

Supreme Court of Missouri,

Division No. 2.

Oct. 13, 1958.

Motion for Rehearing or to Transfer to Court en Banc Denied Nov. 10, 1958.

C. A. Kieffer, St. Louis, for appellant.

John M. Dalton, Atty. Gen., Hugh P. Williamson, Asst. Atty. Gen., for respondent.

EAGER, Judge.

Defendant was found guilty of "Stealing in a value at least $50.00" (Sections 560.-

156 and 560.161 Cum.Supp.1957, V.A.M.S.); at the same time he was found "not guilty of Burglary 2nd degree." The jury being unable to agree upon the punishment, the court assessed it at four years in the penitentiary. See 42 V.A.M.S. Rule 27.03 and Section 546.440 RSMo 1949, V.A.M.S. Judgment and sentence were thereafter rendered in due course, and after a motion for a new trial was overruled. The amended information included a charge of the prior conviction of a felony, but the jury made no finding thereon.

The State's evidence was substantially as follows: a store, known as the "Alsam Surplus Store" at 4325 Manchester in St. Louis was owned and operated by a corporation of that name; on the evening of Dec. 31, 1956, it was closed and locked up, with three different locks on the front door. At about 2:45 or 3:00 a. m. on Jan. 2, 1957, the President, Sam J. Wolff, was called to the store by police where he found the front door "splintered" and all three locks broken. It was found that "about" 23 jackets were missing, of which "about" five were plastic jackets with quilted linings, and the rest were reversible "baseball warm-up jackets," navy blue with white panels down the outside of the sleeves; the cost of the various jackets varied from $5 to $6.25 each; also missing were seven or eight letter openers, costing about thirty cents each, and "around" $5 in coins. It is obvious that, regardless of some ambiguities in numbers and values, the total value of the property missing was substantially over $100. From the testimony of police officers, it further appeared: that an officer on this beat found the front door secure at 1:30 a. m. on the morning in question; he further found it broken open, in the manner stated above, around 3:00 a. m.; he summoned other officers and notified Mr. Wolff. The police found a "tire tool" on the floor inside the store; this was preserved and introduced as an exhibit. Just a week later, at 3:30 a. m. on Jan. 9, 1957, the defendant Hampton was arrested while running along Folsom Avenue, near Tower Grove in St.

Louis. He was then wearing a blue jacket with white stripes down the sleeves; he was taken to a district station, booked, and later interrogated. On cross-examination of one of the arresting officers by defendant's counsel the following occurred: "Q. Sergeant, what was the particular reason for arresting the defendant? A. There had been a burglary in the neighborhood, and he fit the description of that burglar. "Q. On what charge did you book him at the Seventh District? A. For investigation, suspected of burglary." On the same subject, the defendant testified, on direct examination:

"Q. And then you were later arrested on the street? A. Yes, sir.

"Q. Under what circumstances? A. I don't know, sir. There was supposed to have been a burglary that happened, I was walking down the street on Folsom Avenue. * * *

"Q. (By Mr. Leahy, continuing) What time of the day or night was it? A. It was early in the morning, around three-thirty."

On rebuttal, again referring to the subject of the arrest, defense counsel's cross-examination of an officer was in part as follows:

"Q. What was he talking about at the Second District? A. Whether he was implicated in a burglary.

"Q. Which burglary? A. Savoldi's Food Market.

"Q. Any other burglaries? A. Sir?

"Q. Any other burglaries? A. At that time, not to my knowledge, I mean that was the only reason we took him out to the Second District.

"Q. Specifically, you took him for the Savoldi's job. Is that correct? A. Yes, sir. * * *

"Q. So, in your knowledge of police practice, they had a whole bunch

of crimes that a person could be questioned about? A. I was only working on the Savoldi burglary which happened a half-hour or fifteen minutes before he was picked up."

This rebuttal witness had not referred to the Savoldi burglary on direct examination. (We have set out these matters because of a contention which will be mentioned later.)

Two of the police officers who testified had participated in, or were present at, the questioning of defendant concerning the crime now charged. Mr. Wolff, who also testified, was present during a portion of the questioning. One or more of these witnesses testified that defendant made each of the following oral statements: that he met four others, two of whom he knew, and that they rode to the Alsam Store for the purpose of burglarizing it; or, as stated otherwise, that the five "were looking for a place to break into"; that he and one other fellow remained outside in the car while the other three entered and looted the store, returning with the jackets and "knives"; that defendant identified the jacket which he was wearing when arrested as one of those taken in the burglary; that he took the jackets to a tavern the next day and sold them to a colored taxi driver for $20, and that he got $5 for his part. The officers testified further that no violence or threats were used or made and that no promises of leniency were given. Mr. Wolff further identified the jacket defendant was wearing when arrested as one of the precise type which he had in the store. The State also offered the record of a conviction of Paul Dean Hampton, age 17, on March 7, 1955, in Cooper County, Missouri, for "Tampering with an automobile" for which he received a sentence of two years in the Intermediate Reformatory, being discharged by "Commutation" on June 16, 1956.

The defendant himself testified as his only witness. In substance, he gave the following version of the occurrences: that on the evening of Jan. 1, and the morning of Jan. 2, 1957, he visited various places, including a movie, two or three restaurants, a tavern and a bus station, during the course of which travels he picked up the other four persons referred to; at about 3:00 a. m. they drove to a restaurant on Manchester which he said was next door to the "sporting goods place"; that he and one companion entered this restaurant and that he ate a piece of pie and drank a cup of coffee; that when these two went back to the car the others were gone, but soon all three reappeared, carrying jackets like the one produced at the trial; thereupon the jackets were dropped off at one "boy's house," and defendant was taken to his home; that defendant saw Wayne Armon (one of the participants) again the next night and went with him while he supposedly sold the jackets; when asked if Armon did sell them, defendant replied: "I guess he did, yes." He also stated that he saw Armon put them in a car "parked around the alley." On that trip defendant was given one jacket for himself. Defendant further testified that he told the police that he had nothing whatever to do with the burglary and only learned about it on the next night; he denied specifically making some of the statements attributed to him by the police. He also testified that the police "slapped" him around and struck him while he was being questioned. On cross-examination: he admitted the Cooper County conviction and admitted that he told the police that Armon gave him $5 but not as a "share"; he testified that when arrested he was walking and was not running, and that he was coming from his sister's house where he had been playing cards, although his wife was at home. During the State's case in rebuttal an officer testified that defendant had stated, after his arrest, that he was looking for his sister's house at a stated location when arrested, and that he had been doing so for more than two hours. On cross-examination of this witness specific references to the "Savoldi" burglary were brought out, as previously stated. Thereafter, it was shown by the State (without

**352**

objection) that the place where defendant was arrested was a short distance from the location of the "Savoldi" burglary, and that the time was about fifteen minutes after its occurrence.

We shall refer to the appellant as the defendant, and to the respondent as the State. Defendant has not questioned the sufficiency of the evidence to make a submissible case, either in his motion for new trial or in counsel's brief. We do not, therefore, consider that question. The first point briefed by the defendant is, in substance, that the court erroneously and prematurely interrupted the jury's deliberation to receive an incomplete verdict, erroneously gave a new instruction on the assessment of punishment, erroneously failed to return the jury to the jury room for further deliberation, and prematurely assessed the punishment. The transcript shows that the jury (after having been duly instructed and on the same day) informed the court that "they had agreed upon the guilt of the defendant, but were unable to agree upon the punishment * * *," and that thereafter the court gave them Instruction No. 10 as follows: "In addition to the other instructions which the Court has heretofore given you, you are further instructed that under the laws of this state the jury, after hearing the evidence and instructions of the Court, you (sic) should retire and decide upon the guilt or innocence of the defendant in this case; and if the defendant is found guilty by you to assess his punishment in accordance with the other instructions of the Court. If, however, after due deliberation you have been able to and do agree upon the guilt of the defendant but you are unable to agree upon the punishment to be assessed in this cause for such guilt you may return into court a verdict which states that you have agreed upon the guilt of the defendant but are unable to agree upon the punishment for such guilt and in that event the Court may assess the punishment." The transcript further shows that thereafter, on the same day, the jury returned its verdict finding defendant guilty

of stealing, as aforesaid, not guilty of burglary, and that "we further find we are unable to agree upon the punishment to be assessed for such guilt." Thereupon the jury was duly polled, and all stated "that they concurred in the verdict." The court then assessed the punishment at four years in the penitentiary.

Defendant was permitted to adduce evidence on this point upon the hearing of his motion for a new trial. That evidence was, generally, as follows: after the jury had deliberated for approximately an hour, the deputy sheriff asked them: "Gentlemen, have you reached a verdict," whereupon the foreman, apparently, brought their incomplete verdict to the courtroom; the court then asked the jury if it had arrived at a verdict, and the foreman stated that it had; the verdict (incomplete) was handed to the court, whereupon the court noted that no punishment had been assessed; that Instruction No. 10 was read to the jury while it was seated in the jury box; that the clerk was instructed to write on the verdict the last line now appearing thereon to the effect that the jury was unable to agree on the assessment of punishment; the verdict, as rewritten, was read to the jury and the jury was polled. The verdict itself shows that it was signed by the foreman. It is obvious that some colloquy between the court and the jury was omitted in giving this testimony. The record does not show the reason for the sheriff's inquiry mentioned above except, perhaps, by inference from Assignment III of the motion for new trial referring to "a request by the jury for clarification of the instructions * * *."

The transcript recites that the jury informed the court that it was unable to agree upon the punishment to be assessed. The jury had deliberated for sufficient time and with sufficient care to find the defendant guilty of one charge and not guilty of another. Under Rule 27.03 and Section 546.440 RSMo 1949, V.A.M.S., the court "shall assess" the punishment where the jury "fail to agree upon the pun-

ishment * * * *or do not declare such punishment* by their verdict, * * *." (Italics supplied.) Aside from a presumption of the regularity of the proceedings, the record solemnly recites that the jury informed the court that it was unable to agree upon the punishment; it presented to the court an incomplete verdict which, under the very terms of the Rule and the Statute, the court might have accepted, had it chosen to do so; in that event it would necessarily have assessed the punishment. The court is charged with the duty of assessing the punishment when the jury returns a verdict that is defective as to the punishment assessed. State v. Dimmick, 331 Mo. 240, 53 S.W.2d 262, 266. The court, however, adopted the better practice of instructing the jury on the subject, permitting it to sign a verdict which affirmatively stated its inability to agree on the punishment. No error is assigned to the form or substance of the instruction. The giving of such an instruction is proper when the jury has thus announced an inability to fix the punishment. State v. Bunch, 333 Mo. 20, 62 S.W.2d 439; State v. Howard, 324 Mo. 86, 23 S.W.2d 16; State v. Jackson, 340 Mo. 748, 102 S.W.2d 612; State v. Burton, 355 Mo. 792, 198 S.W.2d 19. It is obvious that the court did not err in receiving an "incomplete" verdict, as now alleged; nor did it err in giving Instruction No. 10, if it was clear that the jury could not agree on the punishment. Counsel urge also that the court erred in interrupting the jury's deliberation "after approximately one hour's time." The length of time permitted to a jury for its deliberation is a matter very largely within the discretion of the trial court, and necessarily so. State v. Adams, In Banc, 323 Mo. 729, 19 S.W.2d 671, 675; State v. Burton, 355 Mo. 792, 198 S.W.2d 19, 22; State v. Jackson, 340 Mo. 748, 102 S.W.2d 612. In the Adams case, supra, the court received a verdict in a first degree murder case after the jury had deliberated between three and four hours and, upon failure of the jury to agree on the punishment, assessed the death penalty. On appeal the judgment and sentence were affirmed. As said in the Burton case, supra, at 198 S.W.2d loc. cit. 22: "While the trial judge must give a jury ample time in which to try to resolve their differences about the degree of punishment and not be too hasty in assuming that burden, yet the length of time for such deliberation is a matter entirely within the discretion of the judge. No exact standard can be laid down, or should be. The period of time will differ as panels differ and no jury is ever exactly like another." We may not assume, nor can we find on this record, that the trial judge acted arbitrarily or that he abused the discretion confided in him. Actually the complaint that the court interrupted the jury's deliberations "after approximately one hour's time * * * to * * * receive their incomplete verdict" is not specifically assigned in the motion for new trial but, in the state of this record, we have chosen to consider it. We note also that the motion for new trial states affirmatively that Instruction No. 10 was prepared for the jury "relative to the request raised by the jury for clarification" of the instructions, which would indicate that the whole matter was probably instigated by the jury. The mere fact that the jury was not returned to the jury room for the completion of its verdict is immaterial; under Section 546.240 RSMo 1949, V.A. M.S., "the jury may either decide in court or retire for deliberation." Certainly if the jury may conduct its entire deliberation in the courtroom, it is not error to permit its members to adopt an amended verdict in the courtroom, especially when done in accordance with a previously determined and announced intent. And, see: State v. Richmond, 321 Mo. 662, 12 S.W.2d 34, 36.

■ Two of the remaining points raised in the brief concern matters not assigned in the motion for new trial. These are: (a) improper and prejudicial argument of the prosecutor to the effect that defendant, when arrested "was in the process of getting away from another burglary * * *" for which the court, although sustaining an objection, failed to take any

further action; and also, a further like statement that the defendant "fitted the description of the robbery that occurred 15 minutes or a half-hour earlier"; and (b) that defendant was entitled to show that he "met with physical violence and abuse at the hands of the police officers," and (though wholly unrelated to the rest of the point) that defendant's examination of witnesses concerning the other burglary was not a waiver of "his objection to the incompetency of the prosecutor's improper argument concerning the second crime." The only allegedly improper argument assigned in the motion for a new trial was that the Assistant Circuit Attorney referred to the defendant's prior conviction as a "stolen car case." In view of our Rule 27.20, requiring that specific grounds or causes be assigned "in detail and with particularity," the assignment actually made in the motion could not possibly serve to preserve an objection to the wholly different arguments now complained of. We further note, however, that the court sustained a very general objection at the time of the first remarks complained of in (a) above, and that no further action was requested; to the second remark there was no objection whatever. The situation was not such as to require the court to interfere of its own initiative, and we may not convict it now of error. For a brief discussion of that subject see State v. Laster, 365 Mo. 1076, 293 S.W.2d 300, 305, certiorari denied Laster v. State, 352 U.S. 936, 77 S.Ct. 237, 1 L.Ed.2d 167. As to the first part of (b) above, we note that the defendant was permitted to testify freely and without a single objection to such alleged abuse as he claimed to have received from the police officers; the second part of (b) has been answered by our discussion of the present attempt to assign new phases of the argument as error.

 The one remaining point raised in the brief is that the court erred in permitting the prosecutor to question witnesses concerning defendant's "whereabouts * * * movements and direction of travel at the time of his arrest * * * for the purpose of injecting reference to a separate, unrelated burglary," occurring a week later in the same vicinity. It was this point which caused us to quote certain evidence at some length in our statement of facts. From that statement it is perfectly apparent that defendant's counsel first brought out the matter of a different burglary from a police officer, whether intentionally or otherwise, and that he then made no effort to strike the evidence; the defendant himself also testified on direct examination, referring to the time and circumstances of his arrest, that "There was supposed to have been a burglary that happened, I was walking down the street on Folsom Avenue." And on cross-examination of a rebuttal witness, defense counsel brought out specific references to the other (Savoldi) burglary with not the slightest effort to expunge the testimony, and, indeed, asked: "Specifically, you took him for the Savoldi's job. Is that correct?" The answer was: "Yes, sir." Under these circumstances the references in the State's rebuttal evidence to the time, place and circumstances of defendant's arrest, and to the statements he had made concerning these matters, could, at most, only constitute invited error, even if deemed to refer to the Savoldi burglary. See, generally: Schleappe v. Terminal R. R. Ass'n of St. Louis, 339 Mo. 562, 98 S.W.2d 616, 619; Massman v. Muehlebach, 231 Mo.App. 72, 95 S.W.2d 808, 814; Clark v. Crandall, 319 Mo. 87, 5 S.W.2d 383, 386. Nor do we think that such error, if there was error, could be deemed prejudicial under these circumstances. Moreover, no objections whatever were made to the questions of the State concerning these matters, except for one objection that certain evidence of the comparative locations of certain streets was "immaterial." The point was not sufficiently preserved in any event. The time and place of a defendant's arrest, and his "direction of travel," are generally mere circumstances which may be shown. The only possible complaint of such evidence

here is that it tended to "inject reference" to the other burglary. We have already demonstrated that such objection is not tenable here.

Counsel cite generally the case of Jencks v. United States, 353 U.S. 657, 77 S.Ct. 1007, 1013, 1 L.Ed.2d 1103, supposedly as announcing the principle that the interest of the government in a criminal prosecution " * * * is not that it shall win a case, but that justice shall be done * * *." We do not find that the case is controlling or applicable upon the present record.

We have also examined those parts of the record which we consider in the absence of assignments, and find them sufficient.

The judgment is affirmed.

All concur.