**STATE of Missouri, Respondent,**

v.

**Seymour COVINGTON, Appellant.**

**No. 53358.**

Supreme Court of Missouri,
Division No. 1.

Oct. 14, 1968.

Norman H. Anderson, Atty. Gen., Jefferson City, W. Scott Pollard, Sp. Asst. Atty. Gen., St. Louis, for respondent.

Curtis C. Crawford, St. Louis, for appellant.

STORCKMAN, Judge.

The defendant was convicted of assault with intent to kill with malice aforethought, but since the jury was unable to agree on punishment the court assessed it and sentenced the defendant to imprisonment for a term of twenty-five years. The defendant was allowed to appeal as a poor person and appears here with court-appointed counsel who briefed and argued the case. Two issues are presented on appeal: whether rebuttal evidence was improperly admitted and whether the court was guilty of misconduct in that it coerced the jury to agree upon a verdict. Since no attack is made on the sufficiency of the evidence to support a verdict, a complete statement of the evidence is not required.

On May 1, 1965, at about 2:30 p. m., Woltman's Jewelry Store, on the northwest corner of Union and Lillian in the City of St. Louis, was robbed by three men armed with revolvers. While the robbery was in progress, Miss Celeste McDermott, waiting on the corner for a bus, was looking in the jewelry store window. She was seen by the robbers and one of them, Robert Franklin, went outside and undertook to force her at gun point to go inside. Miss McDermott refused and ran screaming to the middle of the street with Franklin in pursuit. A police officer, John Duggan, in uniform and on his way to work, stopped his automobile and with drawn revolver approached and disarmed Franklin. Not realizing that a robbery was in progress, Officer Duggan started to walk with his prisoner across the street to a call box on Lillian to summon help. In so doing, his back was towards the jewelry store. As he approached the south curb, he heard a voice cry out, "Watch out", and another one say, "Let him have it." Immediately, he was shot in the back of his left shoulder and fell to the sidewalk. The prisoner broke and ran. Officer Duggan rolled over on his side and saw two negro youths firing at him from a distance of from ten to fifteen feet. Two additional bullets hit the officer. The three robbers then ran to their parked car and drove east on Lillian past the place where Officer Duggan was lying. The officer fired four shots from his service revolver at the passing automobile. Officer Duggan was hospitalized for 23 days and off duty for 75 days. He has a permanent injury manifested by a limp.

Robert Franklin, Eugene Smith, and William Curtis Moore were arrested about two days after the robbery. The defendant Seymour Covington left St. Louis shortly after the robbery, went to New York with his girl friend, then to Minneapolis, Minnesota, where he and accomplices held up a jewelry store about a week after his arrival; he was convicted of the offense of "aggravated robbery". Upon being paroled from a penal institution in St. Cloud, Minnesota, he was arrested and returned to St. Louis, July 2, 1966. Franklin, Smith, Moore, and Covington were all charged with robbery; all but Moore were also charged with assault. According to the state's evidence, Moore pointed out the jewelry store, furnished the guns and the automobile for the robbery, but was not present at the robbery or the shooting of Officer Duggan. Franklin, Smith and

Moore pleaded guilty to the charges against them and were serving their sentences in the Missouri State Penitentiary at the time of the defendant's trial on the assault charge.

At the trial the defendant was identified as one of the three robbers who entered the store and as one of the two who remained in the store when Franklin went out after Miss McDermott and who ran out into the street after Officer Duggan arrested Franklin. This identification was made by Margaret Woltman, one of the owners in the store at the time of the robbery, and Dorothy Jarvis, a customer. Officer Duggan identified the defendant as one of the two men who were shooting at him after he had been knocked down by the first bullet.

Franklin, Smith, and Moore, on behalf of the defendant, testified that they were the three who robbed the Woltman Jewelry Store and that the defendant did not participate and was not present at the robbery or the assault on Officer Duggan. Each was asked on cross-examination whether he had made contrary statements to the police officers or the prosecutor. All of them denied having made any statements. In rebuttal the state was permitted to adduce testimony that Franklin, Smith, and Moore had made statements to the police officers and the first assistant circuit attorney. These witnesses further testified that Franklin and Smith had made statements to them that the defendant was one of the three robbers in the store and was one of the two shooting at Officer Duggan, and that the defendant was one of the three that Moore outfitted for the robbery and who came to Moore's house afterwards with the loot and the guns. The jury was admonished by instruction No. 5 that this evidence was not to be considered as substantive or affirmative proof of the guilt or innocence of the defendant but only for impeachment of Moore, Franklin or Smith. Defendant's objection to the evidence was on the ground that the statements were not made in the presence of the defendant.

The defendant assigns as error the admission of this rebuttal evidence.

"Statements offered as *self-contradiction* are admitted not as assertions to be credited, but merely as constituting an inconsistency which indicates the witness to be in error in one or the other statement; * *." Wigmore on Evidence, Third Edition, § 1792. In State v. Shepard, 334 Mo. 423, 67 S.W.2d 91, 95[12], a witness in a murder prosecution was properly questioned regarding his having told officers that the defendant told him, the witness, certain things notwithstanding the statements were made when the defendant was not present. In State v. Moore, Mo., 29 S.W.2d 148, 149[1], testimony that defendant's witness had made a statement that he had heard defendant threaten to kill the victim was held admissible to impeach the witness' contrary testimony on cross-examination. In State v. Norris, Mo., 2 S.W.2d 755[2], testimony regarding contradictory statements of a defendant's witness made out of court were held admissible where a foundation had been laid in the cross-examination of the witness impeached. To the same effect is State v. Keller, Mo., 281 S.W. 960, 963[14]. In State v. Blitz, 171 Mo. 530, 71 S.W. 1027, at p. 1031[8], it was held that the state was entitled to ask a witness for the defendant in a criminal case regarding conversations had by the witness in the prosecuting attorney's office for the purpose of laying a foundation for the contradiction of the witness. See also 58 Am.Jur. Witnesses § 767, and 98 C.J.S. Witnesses §§ 573, 575 and 588.

■ In support of his contention the defendant cites four decisions of this court. State v. Cross, Mo., 357 S.W.2d 125, is an appeal from a conviction of burglary and stealing for which offenses four persons had been originally charged. Two who were convicted before Cross was tried testified on his behalf that they committed the offense and that the defendant Cross was not with them. On cross-examination, these two, unlike the defense witnesses in the instant case, admitted that when they

were arrested they first told the police officers they were innocent and that the crime had been committed by the defendant and another person. They were released and after being re-arrested they told the officers that all four of them had committed the offense. The defendant testifying in his own behalf denied having any part in the crime and offered an alibi. In rebuttal two deputy sheriffs testified regarding the statements previously made to them by the witnesses when the defendant was not present. Consistent with the authorities referred to above, the Cross opinion at page 128[9] recognizes that: "Prior inconsistent statements of a witness are admissible for impeachment as affecting his credibility." The court held, however, that the rebuttal evidence went beyond proper impeachment which the court had the discretion to admit. The court also held an instruction to be prejudicially erroneous. The judgment was reversed and the cause was remanded. "If the witness admits unequivocally that he has made an inconsistent or contradictory statement, evidence thereof is generally held unnecessary and inadmissible." 98 C.J.S. Witnesses § 610. The mere fact that the accused was not present does not render proper impeachment evidence inadmissible.

In State v. Chernick, Mo., 278 S. W.2d 741, also cited by the defendant, the testimony of the circuit attorney that, after the attempt to rob the bank had failed, he talked to the robber who was captured and immediately put out an arrest order for the defendant was held to be prejudicially erroneous because the common enterprise had ended and any information then obtained was hearsay. In Chernick the testimony was being used as substantive evidence not as impeachment. The defendant cites State v. Arrington, Mo., 375 S.W.2d 186, and State v. Martin, Mo., 56 S.W.2d 137, for the proposition that, even though the trial court has a discretion as to the scope of rebuttal evidence, an appellate court will reverse if the court has abused its discretion and the defendant's rights are

thereby prejudicially affected. The rule stated is not shown to have been violated in this case. The inconsistent statements of the defendant's witnesses in the present case constituted proper impeachment, and the trial court did not err in admitting the evidence.

The final assignment of error is that the trial court "was guilty of misconduct in coercing the jury to agree upon a verdict." It appears from the transcript that the jury retired to consider its verdict at about 4 p. m. An hour later the jury sent a note to the court reading as follows: "Formal recording read by Court Clerk concerning sentence of William C. Moore." At 5:23 p. m., the court being unable to locate defendant's counsel sent the note back to the jury with the handwritten statement: "I cannot answer your question. You have heard all of the evidence." At 6:30 p. m., the jury was returned to the courtroom and the court, having ascertained that a verdict had not been agreed upon, directed that the jurors suspend their deliberations and go to dinner. The transcript does not disclose when the jury resumed its deliberations, but the jury returned to the courtroom at 9:15 p. m. The court ascertanied that the jury stood numerically eleven to one and gave them an additional instruction, No. 9, reading as follows:

"At this time, after you have been deliberating, I give you this additional instruction. It is desirable that there be a verdict in every case. It costs considerable money and time and effort to try any lawsuit and the parties are entitled to have their rights determined once and for all in every case, and the 12 jurors chosen to try this case shall be well qualified to do so as any other 12 that might hereafter be chosen. Open and frank discussion by you in your jury room of the evidence in this case may aid you in agreeing upon the facts, however, no juror should ever agree to a verdict that violates the instructions of the court, nor find as a fact that which under the evidence and his conscience he believes to

be untrue, yet each of you should respect the opinions of your fellow jurors as you would have them respect yours, and in a spirit of tolerance and understanding endeavor to bring the deliberations of the whole jury to an agreement upon a verdict."

The defendant objected to the giving of the instruction on the ground that it was coercive and did not conform to the law.

At 10:55 p. m. the jury was again returned to the courtroom and the court ascertained by a show of hands that ten of the jurors thought further deliberations would be fruitless. One of the other two jurors indicated he was the one who sent the note referred to above and renewed his request for the information shown by the circuit court's judgment records of William C. Moore's convictions. Defendant's counsel objected to the records being sent to the jury room. The jury returned to the jury room and sent the court another note and in response to specific questions the court advised the jury in writing, in accordance with the judgment record read into evidence, that William C. Moore had pleaded guilty to robbery in the first degree by means of a dangerous and deadly weapon, that he was sentenced to a term of 25 years which was later reduced to 15 years and that the reasons therefor were not shown by the record. These written answers were made by consent of counsel for the defendant and for the state.

At 12:00 o'clock midnight the jury advised the court by note that it had reached a verdict but could not agree on punishment and asked the court for further instructions. The jury was brought in and the court gave them instruction No. 10 which told them in substance that if they were unable to agree on the punishment they could so state in their verdict and the court would assess the punishment. Defendant's counsel objected to the giving of instruction No. 10 and moved for a mistrial because of the giving of the additional instructions and the proceediings prior to

giving them. The motion was overruled. The jury returned its verdict of guilty and the court later assessed the punishment at 25 years and .in due course pronounced sentence.

Instruction No. 9 is practically a rescript of the instruction given and approved in State v. Roberts, Mo., 272 S.W. 2d 190, 192[1, 2]. The Roberts decision and the same sort of instruction were more recently approved in State v. Watson, Mo., 386 S.W.2d 24, 32–33[18]. The defendant refers us to 39 Am.Jur., New Trial § 103, and 109 A.L.R. at page 78, which we have examined and find nothing contrary to the Missouri decisions above discussed. It is perfectly proper for a trial judge to advise a jury with respect to its duty to arrive at a verdict which will determine the rights of the parties if the court does not coerce the jury in doing so. The defendant has not pointed out any particular in which the instruction is erroneous and we have found none. The contention is denied.

Likewise, the challenge to instruction No. 10 is without merit. S.Ct. Rule 27.03, V.A.M.R., which is the same as § 546.440, RSMo 1959, V.A.M.S., provides that where the jury agreed upon a verdict of guilty but fail to agree upon the punishment to be imposed or do not declare such punishment by their verdict the court shall assess and declare the punishment and render judgment accordingly. Instruction No. 10 was lawfully authorized, was proper as to form and substance, and the court did not err in giving it. State v. Hampton, Mo., 317 S.W.2d 348, 352–353[2].

The length of time that a jury should be permitted to deliberate is a matter very largely within the discretion of the trial court. State v. Hampton, Mo., 317 S.W.2d 348, 353[4]. The defendant further asserts that the court's requesting the jurors to raise their hands if they thought additional time would be helpful in reaching a verdict was erroneous and coercive as to jurors who did not raise their

hands. The propriety of such an inquiry depends upon whether a showing of coercion has been made. State v. Baker, Mo., 293 S.W.2d 900, 905[4]. Defendant cites 85 A.L.R. at page 1441 dealing with intimations by the trial judge as to the rendition of a particular verdict, but the material does not apply to the instant situation. We have carefully examined the transcript and can find no trace of coercion or partiality. The court did not err in overruling defendant's motion for a mistrial.

We have considered all questions presented by the defendant and find them to be without merit. We have also examined those parts of the record specified by S.Ct. Rule 28.02 and find them to be sufficient and free from error.

The judgment is affirmed.

All of the Judges concur.