**Floyd GRAHAM, Petitioner,**

v.

**David HARRIS, Superintendent, Green Haven Correctional Facility, Respondent.**

No. 78 Civ. 1356 (LFM).

United States District Court,
S. D. New York.

June 20, 1978.

Kenneth E. Demario and Daniel J. Steinbock, Prisoners' Legal Services of New York, New York City, for petitioner.

Louis J. Lefkowitz, Atty. Gen. of the State of New York by Patricia C. Armstrong, Asst. Atty. Gen., New York City, for respondent.

## OPINION

MacMAHON, District Judge.

Petitioner Floyd Graham applies for a writ of habeas corpus, pursuant to 28 U.S.C. § 2254.

In 1973, petitioner was convicted in Supreme Court, Bronx County, of robbery in the first degree and possession of a weapon as a felony, both crimes arising out of the armed robbery of a Bronx tavern in August 1972. The Appellate Division modified the conviction but affirmed it in relevant part, two judges dissenting. *People v. Graham*, 48 A.D.2d 646, 368 N.Y.S.2d 518 (1st Dep't 1975). As modified, the conviction was affirmed by the New York Court of Appeals. 39 N.Y.2d 775, 385 N.Y.S.2d 31, 350 N.E.2d 408 (1976) (memorandum).[1] This application for federal habeas corpus relief was then filed, petitioner contending that the jury's guilty verdict had been coerced by the state trial judge's giving of two "*Allen* charges" after already lengthy deliberations. See *Allen v. United States*, 164 U.S. 492, 17 S.Ct. 154, 41 L.Ed. 528 (1896). For the reasons set forth below, we deny the application and refuse to issue the writ.

## PETITIONER'S STATE TRIAL

Petitioner's trial commenced on the morning of Thursday, July 26, 1973. The People's case consisted of the testimony of three witnesses and was presented in approximately three hours. Juraud Jackson, the owner of the tavern in which the robbery took place, testified to the circumstances surrounding the crime and identified petitioner as the perpetrator. Lisa Jackson, the daughter of Juraud Jackson, testified similarly. The testimony of the two Jacksons, however, differed in one significant respect. Lisa Jackson claimed that she and her father had viewed an array of police mug shots at the precinct after the robbery and that she and her father had identified someone who looked like the robber. Juraud Jackson, on the other hand, steadfastly contended that he had viewed no mug shots. The People's third witness

---

1. Thus, petitioner has exhausted his state court remedies. See 28 U.S.C. § 2254(b). Of course, there is no requirement that petitioner have sought direct review of his conviction in the United States Supreme Court. See *Fay v. Noia*, 372 U.S. 391, 435–36, 83 S.Ct. 822, 9 L.Ed.2d 837 (1963). Furthermore, petitioner actually litigated his federal claims in the state courts and is guilty of no procedural default which might bar review of the federal claims here. Compare *Wainwright v. Sykes*, 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977). The issues raised in this petition are therefore properly before us.

was the arresting officer, who merely described the circumstances of petitioner's arrest.

The defense case was brief, consisting solely of a police report which contradicted the testimony of both Jacksons, stating, in pertinent part, that both Jacksons had viewed mug shots but that "the results [of the viewing] were negative." The major issues for the jury, therefore, concerned identification and the credibility of the witnesses.

The jury began its deliberations at 1:05 P.M. on Monday, July 30.[2] After three hours, it requested the reading of testimony concerning the photograph viewing. At 9:35 P.M., after a dinner break, the jury announced that it was deadlocked. The trial judge sent the jury back for further deliberation, and at 11:00 P.M., with no verdict in sight, ordered it to spend the night in a hotel.

Deliberations resumed at 10:30 the following morning and continued all day, interrupted only by lunch and the reading back of the testimony of the two Jacksons. At 6:55 P.M., the jury, for the second time, announced its deadlock. The trial judge then delivered the first *Allen* charge[3] and sent the jury back for further deliberation. At 11:20 P.M., the jury again announced that it was hopelessly deadlocked. The court then gave a second *Allen* charge in a modified form[4] and sent the jury to a hotel for the night.

---

2. Summations of counsel no doubt took place sometime during the afternoon of Thursday, July 26, or during the day of Friday, July 27, or both. However, the record does not inform us why jury deliberation did not commence until the following Monday.

3. The court's first *Allen* charge provided, in pertinent part:

"Now, no juror from mere pride of opinion hastily formed or expressed should refuse to agree nor, on the other hand, should he surrender any conscientious views founded on the evidence.

It is the duty of each juror to reason with his fellow jurors concerning the facts with an honest desire to arrive at the truth and with a view of arriving at a verdict.

It should be the object of all the jury to arrive at a common conclusion and to that end to deliberate together with calmness.

It is your duty to agree upon a verdict if that be possible without a violation of conscientious convictions.

It is the duty of each juror to give careful consideration to the views of his fellow jurors.

He or she should not close their ears and stubbornly stand upon the position he or she first takes regardless of what may be said by the other juror.

It should be the object of all of you to arrive at a common conclusion and to that end you should deliberate together with calmness.

It is the duty of you jurors to keep your minds open and free to every reasonable argument that may be presented by your fellow jurors that you may arrive at a verdict which justly answers the consciences of the individuals making up the jury.

A juror should not have any pride of opinion and should avoid hastily forming or expressing an opinion but he should not surrender any conscientious views founded upon the evidence unless convinced by his fellow jurors of his error or her error.

So long as further argument and comparison of views may aid a jury in bringing about a unanimous verdict, jurors should continue to deliberate and to continue with such comparison of views and statement of argument.

It is my opinion that you have still not deliberated for such an extensive period of time without agreeing upon a verdict. . . ."

4. The second *Allen* charge provided, in pertinent part:

"It is desireable [sic] if a verdict is at all possible that this be done both from the viewpoint of both the defendant and the People. This, of course, means only a verdict which reflects the conscientious judgment of each and every juror.

I do not propose to ask nor, indeed, do I have the right to inquire as to how you stand. It is quite normal for jurors to have difficulties. This is quite common.

Frequently jurors after extended discussion may find that a point of view which originally represents a fair and considered judgment might well yield upon a review of the facts and the evidence.

Remember also and I must emphasize this that no juror must vote for any verdict unless after full discussion, consideration of the issues, an exchange of views, represents his or her considered judgment.

Frequently further consideration may indicate that a change of original attitude might be fully justified on the law and the facts.

You still have not in my judgment deliberated for such an extensive period of time

On August 1, the jury resumed its task at 10:30 A.M. At 3:00 P.M., it requested and received additional instructions on reasonable doubt, credibility and identification. At 4:50 P.M., after nearly twenty-four hours of deliberation over the course of three days, the jury returned a verdict of guilty.

## DISCUSSION

Before turning to the merits of this petition, we pause to define the precise question presented. Petitioner does not claim, nor can he, that the giving of the *Allen* charges was *per se* unconstitutional. The decision in *Allen v. United States, supra,* 164 U.S. 492, 17 S.Ct. 154, remains viable, if not unsullied, and the mere giving of such a charge raises no claim cognizable in federal habeas corpus. See *Weston v. Rose,* 527 F.2d 524, 525 (6th Cir. 1975).

Nor does petitioner contend that the language of the charges violated his right to a fair trial. The charges given here were balanced, the trial judge several times instructing the jurors that none of them should surrender a well-founded personal belief in the non-guilt of the defendant. Compare *Marsh v. Cupp,* 536 F.2d 1287, 1289–92 (9th Cir.), *cert. denied,* 429 U.S. 981, 97 S.Ct. 494, 50 L.Ed.2d 590 (1976) (upholding use of two balanced *Allen* charges) with *United States ex rel. Tobe v. Bensinger,* 492 F.2d 232, 238–39 (7th Cir. 1974) (disapproving informal instruction without "admonition that no juror should relinquish his conscientiously held convictions . . . .").

Petitioner does claim, however, that the use of two *Allen* charges was coercive in the particular circumstances of this case, given the relative simplicity of the issues, the brevity of the trial and the length of the jury deliberations. The starting point for analysis of this claim must be *Jenkins v. United States,* 380 U.S. 445, 85 S.Ct. 1059, 13 L.Ed.2d 957 (1965). There, the Court reversed a conviction obtained after the trial judge had instructed the jury: "You

have got to reach a decision in this case." 380 U.S. at 446, 85 S.Ct. at 1060. *Jenkins* establishes a "totality of the circumstances" test: the question is whether the trial court's instruction was coercive "in its context and under all the circumstances" of the particular case. *Id.*

In this case, coercion cannot be inferred from the mere fact that the jury deliberations were lengthy. Certainly, twenty-four hours was a rather long time for deliberation in relation to the length of the trial. Contrary to petitioner's contentions, however, the issues before the jury were not all that easy. The credibility of the witnesses was starkly at issue and may well have been a matter of particular difficulty, involving as it did the witnesses' opportunities to observe and remember. See *United States ex rel. Webb v. Court of Common Pleas,* 516 F.2d 1034, 1044–45 (3d Cir. 1975). Our conclusion in this regard is confirmed by an examination of the materials which the jury asked to have read back over the course of its deliberations. In every instance, the jury requested to hear testimony which went to the credibility of the two Jacksons.

Since the questions for the jury were particularly nettlesome, the length of deliberations bespeaks only cool deliberation based on the evidence. It does not suggest that the jurors were being held against their will, going through the motions of deliberation and returning a verdict simply to end their deliberative ordeal. In these circumstances, we cannot conclude that the jurors regarded the *Allen* charges as threats that they would in no event be released until a verdict was returned. On the contrary, the *Allen* charges could only have been taken as admonitions to continue their already in-depth analysis of the case.

Furthermore, it is significant that some seventeen hours on the clock and six hours of deliberation elapsed between the giving of the second *Allen* charge and the return of the verdict. During this time, the jury

without agreeing upon a verdict and, therefore, I am going to send you down to the

hotel again tonight and you will resume your deliberations tomorrow at 10:30."

heard supplemental instructions on certain points of law and, no doubt, continued to deliberate. This lengthy span between the *Allen* charges and the verdict negates any inference of coercion. See *United States ex rel. Brothers v. Rundle*, 414 F.2d 244, 245 (3d Cir. 1969) (one hour between charge and verdict); *United States v. Barash*, 412 F.2d 26, 32 (2d Cir.), *cert. denied*, 396 U.S. 832, 90 S.Ct. 86, 24 L.Ed.2d 82 (1969) (three hours).

We find no coercion in the other circumstances of the case. The jurors were not threatened or mistreated. The *Allen* charges did not misinform them about the consequences of a failure to return a verdict. There is no merit to the claim that coercion resulted from the court's giving the *Allen* charge and then sending the jurors to a hotel, rather than to their homes. The use of a hotel is justified as a necessary yet relatively unobtrusive means of isolating the jurors from extra-judicial influences, cf. *DeGrandis v. Fay*, 335 F.2d 173, 175 (2d Cir. 1964), and guards against a mistrial by keeping them assembled. Surely, the trial judge, after such an investment of judicial resources, should not risk losing a juror by allowing the jurors to separate and go home alone in New York at 11:00 P.M. Moreover, we cannot conclude that this inconvenience, if inconvenience it be, was so grave as to cause the jurors to abandon serious deliberation and convict rather than spend another night away from home.

■ Finally, no error of constitutional magnitude stems from the mere fact that a form of the *Allen* charge was given twice. Without regard to the number of times the charge is given, the test is whether the instructions to the jury were coercive under all the circumstances, a test which, we have concluded, was not violated here. See *Marsh v. Cupp, supra*, 536 F.2d at 1289–92 (upholding use of two *Allen* charges under

*Jenkins'* "totality of the circumstances" test). It matters not that certain state and federal appellate courts, pursuant to their supervisory powers, banned the use of multiple *Allen* charges in prosecutions within their jurisdictions. See, e. g., *United States v. Seawell*, 550 F.2d 1159, 1162 & n.4 (9th Cir. 1977) (citing cases). We do not agree with those decisions, but, in any event, they were not based on the constitution, which, of course, is the only applicable legal source in this habeas corpus proceeding. See *United States v. Seawell, supra*, 550 F.2d at 1163 n.9.[5]

### CONCLUSION

■ The trial judge was not required to accept at face value the jury's statement that it was deadlocked. *Mills v. Tinsley*, 314 F.2d 311, 313 (10th Cir.), *cert. denied*, 374 U.S. 847, 83 S.Ct. 1907, 10 L.Ed.2d 1067 (1963). Indeed, the defendant has a constitutionally protected interest in proceeding to verdict, and a hasty trial judge would commit error in failing to prompt the jury to verdict. Cf. *United States v. Jorn*, 400 U.S. 470, 91 S.Ct. 547, 27 L.Ed.2d 543 (1971). In this case, the prompting did not cross the line into coercion, and we therefore find no error in the use of the *Allen* charges.

Accordingly, the application for a writ of habeas corpus is denied. A certificate of probable cause, 28 U.S.C. § 2253, will not issue since there are no questions of substance on which the Court of Appeals should rule.

So ordered.

---

5. To the extent petitioner challenges simply the trial court's failure to declare a mistrial, the claim is without merit. The length of time a jury may be kept together for deliberations is a matter committed to the sound discretion of the trial judge. *DeGrandis v. Fay*, 335 F.2d 173, 176 (2d Cir. 1964); *United States ex rel.* *Latimore v. Sielaff*, 561 F.2d 691, 696 (7th Cir. 1977). We have already determined that the jury issues here were such that twenty-four hours of deliberation may well have been necessary. Thus, we cannot say that the trial judge abused his discretion in failing to declare a mistrial.