STATE of Missouri, Respondent,

v.

Robert ANDERSON, Appellant.

No. 66556.

Supreme Court of Missouri,
En Banc.

Oct. 16, 1985.

Rehearing Denied Nov. 21, 1985.

Henry W. Cummings, St. Charles, for appellant.

John Ashcroft, Atty. Gen., Dan Crawford, Asst. Atty. Gen., Jefferson City, for respondent.

DONNELLY, Judge.

Defendant was convicted by a jury of two counts of possession of a controlled substance, § 195.020, RSMo Supp.1982, and was acquitted of a third count. The trial court determined that defendant was a "prior offender" within the meaning of § 558.016.2, RSMo Supp.1984, and sentenced him to concurrent terms of imprisonment of ten years on each of the two counts. On appeal, a majority of participating judges of the Eastern District of the Court of Appeals ordered the cause transferred to the Supreme Court to determine whether the enhancement provisions of § 195.200.1(1), RSMo Supp 1982, preempt application of Chapters 556, 557 and 558,

RSMo Supp.1984. By order of this Court, the case was retransferred to the Eastern District of the Court of Appeals for reconsideration in light of *State v. LaPlant*, 673 S.W.2d 782 (Mo. banc 1984). After an opinion was filed by the Eastern District of the Court of Appeals, this Court ordered transfer on application of the defendant. We now decide this case as if the appeal had originally been brought in this Court. Mo. Const. art. V, § 10. We affirm.

Defendant first argues that the trial court erred in admitting into evidence various items recovered by police from the kitchen, basement and master bedroom of the house where he resided. The items covered by defendant's objection include: a tooth brush, a playing card, a calendar, a "foil packet," a plastic bag and a small plastic vial each containing or coated with a brown powdery substance. Defendant contends that the foregoing items are the fruit of an unlawful search in that the items seized were beyond the scope of the search warrant which identified only cocaine as the item sought to be uncovered by the search. Relying primarily on *U.S. v. Jacobsen*, 683 F.2d 296 (8th Cir.1982), rev'd 466 U.S. 109, 104 S.Ct. 1652, 80 L.Ed.2d 85 (1984), defendant also argues that the tests which police performed on the various pills and capsules found in his home were conducted without a warrant and, therefore, amounted to an unlawful search or seizure within the meaning of U.S. Const. amend. IV.

In order to attack the validity of a search and the admissibility of the fruits of that search on appeal, the defendant must have filed a motion with the trial court to suppress the evidence. *See* Rule 34.01; § 542.296, RSMo Supp.1984. The defendant must have also kept the question alive by asserting timely and proper objections throughout the trial and by bringing it to the attention of the trial court in a motion for new trial. *State v. Yowell*, 513 S.W.2d 397, 402 (Mo. banc 1974), *State v. Johnson*, 472 S.W.2d 393, 394 (Mo.1971). In the present case, defendant filed no motion to suppress with the trial court. The only objection to the evidence asserted by defendant at trial and in his motion for new trial was based on relevancy and not that the evidence was obtained by means of an unconstitutional search. Defendant has failed to preserve this point for appellate review. *Cf. State v. Stevenson*, 589 S.W.2d 44 (Mo.App.1979); *State v. Pruitt*, 556 S.W.2d 63 (Mo.App.1977).

We also reject defendant's assertion of plain error under Rule 29.12(b) since our review of the transcript and briefs does not reveal that "manifest injustice" resulted from the admission of the items in question. *See Yowell*, 513 S.W.2d at 403; *State v. Bryson*, 506 S.W.2d 358, 361 (Mo.1974); *State v. Lockhart*, 501 S.W.2d 163, 166 (Mo.1973).

Defendant next argues that the trial court erred in sentencing him as a prior offender under § 558.016, RSMo Supp. 1984, in lieu of instructing the jury as to the permissible range of punishment and allowing the jury to assess punishment as part of the verdict pursuant to § 195.200.1, RSMo Supp.1982. Defendant contends that in situations involving successive violations of the Narcotic Drug Act, §§ 195.010 et seq., RSMo 1982, the penal section of the Act, § 195.200, RSMo Supp.1982, provides the complete code of penalties and that the general sentencing provisions of Chapters 557 and 558, RSMo Supp.1984, are not applicable. Defendant reasons that the Legislature did not intend for Chapters 557 and 558, RSMo Supp.1984, to apply to second offenses under § 195.020, RSMo 1982, because such an application would create the possibility for the double enhancement of punishment for a single offense.

Contrary to defendant's assertion, enhancement is not an issue in the present case because the sentence imposed by the trial court is one which was authorized for a first offense. *State v. LaPlant*, 673 S.W.2d 782 (Mo. banc 1984). In this instance, there is no reason why the trial court may not affix punishment pursuant to Chapters 557 and 558. *Id.* at 785. Moreover, even if punishment were determined pursuant to § 195.200.6, RSMo 1982,

without reference to Chapters 557 and 558, RSMo Supp.1984, the responsibility for affixing punishment would still be on the court and not the jury.

By his final point, defendant contends that the trial court abused its discretion in refusing to grant his motion for mistrial when, under the circumstances of this case, the jury was coerced into reaching a verdict. The jury deliberated approximately four hours and then informed the bailiff that they had reached a verdict on one count but were hopelessly hung on the remaining two counts. The trial court then stated for the record (out of the presence of the jury) that the jury would be brought into the courtroom and an inquiry would be made to determine how the vote of the jury stood. The trial court further stated that in the event that the jury was deadlocked at six to six or seven to five, a mistrial would be declared; but in the event the jury was deadlocked "somewhere between nine to three and eleven to one," the "hammer" instruction, MAI–CR2d 1.10 would be read to the jury.[1]

When the jury returned to the courtroom, the trial judge asked the foreman how the last vote of the jury stood without reference to guilt or innocence. The foreman indicated that it was "ten to one on one count and * * * nine to three on the second count." The trial court then read the "hammer" instruction to the jury over the objection of defense counsel that the giving of the "hammer" instruction would be coercive in light of the fact that the jury knew that snow had begun to fall.[2] More than an hour after the "hammer" instruction was read, the jury reported to the court for a second time that it was still

hopelessly hung. The trial court made no reply. Forty minutes after the jurors indicated for the second time that they were deadlocked, the trial court stated for the record (out of the presence of the jury) that it would allow the jury to deliberate for another twenty-five minutes. Sometime after the announcement that an additional twenty-five minutes would be permitted for jury deliberation, the jury returned to the courtroom and delivered its verdicts finding defendant guilty as charged in Count I and Count II and not guilty as charged in Count III. The jury was polled at the request of defendant and at this time each juror identified the verdict as his or her own.

Prior to pronouncement of sentence, a letter written by one of the members of the jury was received by the trial court and made a part of the record. In the letter it was opined that by allowing further deliberation after jury members indicated an inability to reach a unanimous decision and by reading the "hammer" instruction to the jury, the trial court pressured jurors who had voted in the minority on the unresolved issues to change their vote "against his or her conscience" in order to avoid the possibility of an all-night or all-weekend deliberation.

■ In reviewing defendant's final point, we are mindful that the declaration of a mistrial rests largely in the discretion of the trial court because, by virtue of having had the opportunity to observe the incident precipitating the request for mistrial, the trial court is in a better position than an appellate court to determine the prejudicial effect, if any, that the incident had on the

1. MAI–CR2d 1.10 provides as follows:

It is desirable that there be a verdict in every case. The trial of a lawsuit involves considerable time and effort, and the parties are entitled to have their rights determined once and for all in every case. The twelve jurors chosen to try this case should be as well qualified to do so as any other twelve that might hereafter be chosen. Open and frank discussion by you in your jury room of the evidence in this case may aid you in agreeing upon the facts; however, no juror should ever agree to a verdict that violates the

instructions of the Court, nor find as a fact that which under the evidence and his conscience he believes to be untrue. Yet each of you should respect the opinions of your fellow jurors as you would have them respect yours, and in a spirit of tolerance and understanding endeavor to bring the deliberations of the whole jury to an agreement upon a verdict.

2. The trial judge stated for the record that at the time MAI–CR 1.10 was read, no appreciable amount of snow had collected on the roads.

jury. *State v. Davis,* 653 S.W.2d 167, 176 (Mo. banc 1983).

The length of time which a jury is allowed to deliberate as well as the determination of whether to read MAI–CR2d 1.10 to the jury are matters committed to the sound discretion of the trial court. *See State v. Broadux,* 618 S.W.2d 649, 651 (Mo. banc 1981); *State v. Covington,* 432 S.W.2d 267, 271 (Mo.1968). In order to establish an abuse of that discretion it must be shown that, based on the record of what was said and done at the time of trial, the verdict of the jury was coerced. *State v. Talbert,* 454 S.W.2d 1, 4–5 (Mo.1970). In the present case, defendant does not contend that the reading of the hammer instruction to the jury coerced the verdict. Rather, defendant argues that once the hammer instruction was given, it was coercive to allow the members of the jury, without further instruction, to continue their deliberations after they had indicated that they were still deadlocked.

The record below does not permit the inference that the verdict of the jury was coerced. Being told by a juror that further deliberation would not be helpful in resolving a deadlock does not preclude the trial judge from reading the hammer instruction, and certainly does not prevent the trial judge from attempting to facilitate a verdict by giving no additional instruction and allowing further time for deliberation. *See State v. Newman,* 651 S.W.2d 185, 187 (Mo.App.1983); *State v. Gardner,* 600 S.W.2d 614, 623–24 (Mo.App.), *cert. denied* 449 U.S. 1020, 101 S.Ct. 585, 66 L.Ed.2d 481 (1980). *See also, People v. Latimore,* 33 Ill.App.3d 812, 342 N.E.2d 209 (1975); *People v. Venable,* 46 A.D.2d 73, 361 N.Y.S.2d 398 (1974), *aff'd sub nom. People v. Broadie,* 37 N.Y.2d 100, 371 N.Y.S.2d 471, 332 N.E.2d 338, 371 N.Y.S.2d 411, *cert. denied* 423 U.S. 950, 96 S.Ct. 372, 46 L.Ed.2d 287 (1975).

In the present case, when the trial judge was informed approximately one hour after reading the hammer instruction that the jury still felt that it was hopelessly hung, the jury had deliberated a total of about five hours. In light of the nature of the case and complexity of the questions confronting the jury, it was not unreasonable to believe that allowing more than five hours for deliberation might lead to a unanimous verdict. The trial court was not compelled to accept at face value the jury's contention that it was hopelessly hung. "Indeed the defendant has a constitutionally protected interest in proceeding to a verdict and a hasty trial judge would commit error in failing to prompt the jury to a verdict." *Graham v. Harris,* 452 F.Supp. 137, 141 (C.C.S.D.N.Y.1978).

Based upon the record of this case it cannot be said that, after giving the hammer instruction, the trial court abused its discretion in failing to respond to the jury when again informed by jury members of a perceived deadlock. Any response in such a situation posed a far greater danger of coercing a verdict than remaining silent.

We conclude that the trial court did not abuse its discretion in failing to grant a mistrial based on defendant's claim that the verdict was the product of coercion.

The judgment of the trial court is affirmed.

HIGGINS, C.J., BILLINGS, WELLIVER and RENDLEN, JJ., and FINCH, Senior Judge, concur.

BLACKMAR, J., concurs in separate opinion filed.

ROBERTSON, J., not participating because not a member of the Court when cause was submitted.

BLACKMAR, Judge, concurring.

Judge Donnelly persuades me, contrary to my initial impression, that there was no abuse of discretion in allowing the jury to deliberate for, at the most, 65 minutes after it had reported for a second time that it was unable to agree. The trial judge perhaps should treat the jury's second report as an indication that it had complied with the directions of the hammer instruction, and should probably reassemble them in a

reasonable time to determine whether there were any prospects for a complete or partial verdict. Judge Campbell was mindful of this responsibility and, 40 minutes after receiving the question, he announced a time limit for further deliberation to those present, but not to the jury. He had no purpose of leaving them out indefinitely. The record does not establish an impending snowstorm of such magnitude as to make further deliberations coercive. Under long established law we are not able to give any weight or consideration to the juror's letter, written after the verdict was returned.